## CHICAGO G. W. RY. CO. v. HEALY.

(Circuit Court of Appeals, Eighth Circuit. March 21, 1898.)

No. 891.

1. TRIAL—INSTRUCTION.
Where, at the conclusion of the plaintiff's testimony, the court overruled a motion to direct a verdict in favor of the defendant, to which the defendant excepted, but did not stand upon the exception, and proceeded to introduce evidence, the defendant thereby waived the exception.

2. SAME.
Where, at the close of all the evidence, a motion is made to instruct the jury to return a verdict in favor of the defendant, in deciding the motion the court assumes that all the evidence in the case is true, and that the witnesses are all credible.

3. SAME.
Where the facts are not controverted, and where the inference to be drawn from them is certain, necessary, and undisputed, or where there is no evidence tending to establish a necessary element in the case, the trial court may direct what verdict should be given; but when it is a matter of judgment and discretion, of sound inference, and what deduction is to be drawn from even undisputed facts, the law commits it to the decision of the jury, under instructions from the court.

4. SAME—OMISSION FROM INSTRUCTIONS.
Where the instruction is correct as far as it goes, and the only contention is that it did not go far enough, such contention cannot be taken advantage of on error, unless the attention of the trial court was called to the omission, and request made for more explicit instructions.

5. MASTER AND SERVANT—DEFECTIVE RAILWAY BRIDGE—DUTY OF INSPECTION.
A railroad company owes to its train employés the duty of making reasonably frequent and reasonably thorough inspections of the condition of the timbers in a bridge, and is bound to apply such tests as are ordinary and usual in that business to ascertain any defects which exist therein.

In Error to the Circuit Court of the United States for the Southern District of Iowa.

A. B. Cummins, for plaintiff in error.

S. P. Huston (J. P. Flick, on brief), for defendant in error.

Before BREWER, Circuit Justice, SANBORN, Circuit Judge, and RINER, District Judge.

RINER, District Judge. This is an action brought by Nellie Healy, as administratrix of the estate of John J. Healy, deceased, against the Chicago Great Western Railway Company, to recover

damages for the death of said John J. Healy, which she alleges was caused by the negligence of the railway company. The case was commenced in the state court, and removed by the plaintiff in error to the circuit court for the Southern district of Iowa. In her petition the plaintiff, in substance, alleged that she was the duly appointed, qualified, and acting administratrix of the estate of the said John J. Healy, deceased; that the defendant, at the time of the injury complained of, was a corporation duly incorporated and organized under and by virtue of the laws of the state of Illinois, as a railroad company, and was operating a line of railway from the city of Des Moines, in the state of Iowa, to the city of St. Joseph, in the state of Missouri; that in the state of Iowa, on the line of defendant's road, and forming a part of the road, there was a long and high bridge, spanning a water course; that this bridge was negligently and defectively constructed by the defendant, and by the defendant in that condition negligently and carelessly maintained; that on the 6th day of August, 1894, and long prior thereto, the defendant, its agents and servants, had negligently permitted the material composing a part of the bridge to become and remain rotten, unsound, and out of repair; that the bridge was unsafe and dangerous for trains to pass over. It was further alleged that John J. Healy was in the employ of the defendant company as a freight conductor; that on the 6th of August, 1894, he was engaged in running a freight train for the defendant between the city of St. Joseph, Mo., and the city of Des Moines, Iowa; that while his train was passing over the bridge described in the petition, although he was exercising due care and caution on his part, it gave way, wrecking the train, and injuring Healy to such an extent that he died as a result of his injuries. The answer admitted that the defendant was a corporation organized under the laws of the state of Illinois, and was at the time alleged in the petition, and at the time the answer was filed, engaged in operating a line of railway in the state of Illinois, and through the state of Iowa, and from the city of Des Moines, in the state of Iowa, to the city of St. Joseph, in the state of Missouri; that at the time alleged in the petition John J. Healy, deceased, was in the employ of the defendant as a freight conductor, and engaged in running a freight train over its road between the cities of Des Moines and St. Joseph; and that at or about the time alleged in the petition said John J. Healy met with an accident which caused his death,—concluding as follows: "The defendant denies each and every other allegation in said petition contained." There was a trial; verdict and judgment for the plaintiff in the sum of $6,000.

At the trial it was admitted that the plaintiff below was the administratrix of the estate of John J. Healy, deceased, that she was a citizen of the state of Iowa, and that the defendant was a corporation organized under the laws of the state of Illinois. The following facts were established by the evidence: At the time mentioned in the pleadings the plaintiff in error owned and operated a line of railroad between the city of Des Moines, in the state of Iowa, and the city of St. Joseph, in the state of Missouri. On the line of,

and forming a part of, the railroad, between the places just mentioned, and within the state of Iowa, there was a wooden bridge, known as a "pile bridge," estimated by some of the witnesses to be about 252 feet long, crossing a deep ravine. In the construction of this bridge, rows of piling, 15 feet apart, were driven into the ground across the course of the road. Upon these pilings, caps were placed; upon these caps, stringers running lengthwise of the bridge were laid; and upon these stringers the cross-ties and rails were placed. The bridge was first constructed in 1887, and, as originally constructed, the pilings, caps, stringers, and sway braces were of white pine lumber. In 1893, about a year before this accident, the bridge was reconstructed in part by putting in oak pilings, new caps, and new sway braces, using the old stringers. On the 6th of August, 1894, John J. Healy, the husband of the defendant in error, was in the service of the plaintiff in error as a freight conductor in charge of a train consisting of an engine, tender, 14 loaded freight cars, and a caboose, going north. That his run was from St. Joseph, Mo., to Des Moines, Iowa. That when his train was upon the bridge in question the bridge fell, injuring Healy to such an extent that he died within an hour from the time of the accident. The track, for a distance of about three-quarters of a mile south of the bridge, was straight, with a slight down grade towards the bridge. The steam was shut off by the engineer some distance before reaching the bridge, and the train was running by its own gravity, without jar perceptible to the train crew, until it was on the bridge, when there was a sudden jerk felt, and the bridge, with the exception of 40 or 50 feet of the north end, fell. In addition to the foregoing facts, which were not disputed, the plaintiff offered testimony tending to prove that the stringers of the bridge, where they rested on the caps, were badly rotted; that the ends of some were entirely rotted off, other largely so, and all more or less decayed and unsound. The testimony on behalf of the defendant tended to prove that there was a general inspection of this bridge by the superintendent of bridges in June, 1894, about two months prior to the accident, and that it was seen by the division bridge foreman frequently between the time it was rebuilt, in 1893, and the date of the accident; that the stringers at the date of the accident were not decayed. It also offered testimony tending to show that one of the cars in Healy's train had become derailed about 45 feet from the south end of the bridge; that the trucks of that car, falling upon the ties with the force given them by the moving train, tore up and destroyed the bridge.

Three assignments of error are insisted upon by the plaintiff in error as grounds for reversing the judgment:

First. "The court erred in overruling the defendant's motion, made at the close of the testimony offered by the plaintiff in chief, to instruct the jury to return a verdict for the defendant." Second. "The court erred in refusing to give to the jury at the close of the testimony the instruction asked by the defendant, directing the jury to return a verdict for the defendant; said instruction being as follows: 'You are instructed to return a verdict for the defendant.'" Third. "The court erred in that part of its instructions to the jury relating to the measure of damages, in this: That there was no rule or criterion stated in said instruc-

tions whereby the jury could be guided in its deliberations upon that subject. The court directed the jury that the amount to be recovered was compensation for the loss suffered by the estate of the deceased, but it did not give any instruction that would guide the jury in determining how to measure or compute such loss."

In reference to the first assignment of error, but little need be said. Upon the conclusion of the plaintiff's testimony, the defendant moved the court to direct a verdict in its favor. This motion was overruled by the court, and the defendant excepted. It did not, however, stand upon its exception, but proceeded to introduce testimony in its own behalf. It thereby waived the exception. Bogk v. Gassert, 149 U. S. 17, 13 Sup. Ct. 738; Railway Co. v. Daniels, 152 U. S. 684, 14 Sup. Ct. 756; Railway Co. v. Hawthorne, 144 U. S. 202, 12 Sup. Ct. 591.

It is also insisted that the court erred in refusing to instruct the jury to return a verdict for the defendant at the close of all of the evidence in the case. A motion of this character is in the nature of a demurrer to the evidence. "It answers the same purpose, and should be tested by the same rules. A demurrer to the evidence admits, not only the facts therein stated, but also every conclusion which a jury might fairly or reasonably infer therefrom." Schuchardt v. Allens, 1 Wall. 359, 370. In deciding this motion the circuit court had to assume that all of the evidence in the case was true, and that the witnesses were all credible; for if there were any questions in the case relating to the credibility of witnesses, or if what the evidence proved depended upon the credibility of witnesses, or upon the proper deduction to be drawn from the evidence, they were questions, not for the court, but for the jury, under the direction of the court. In the case of Hickman v. Jones, 9 Wall. 197, an action for malicious prosecution, in which the court peremptorily instructed the jury to acquit two of defendants, the supreme court, in holding this instruction to have been erroneous under the circumstances, said:

"There was some evidence against most of them. Whether it was sufficient to warrant a verdict of guilty was a question for the jury, under the instruction of the court. The learned judge mingled the duty of the court and jury, leaving to the jury no discretion but to obey the direction of the court. Where there is no evidence, or such a defect in it that the law will not permit a verdict for the plaintiff to be given, such an instruction may be properly demanded, and it is the duty of the court to give it. To refuse is error. In this case the evidence was received without objection, and was before the jury. It tended to maintain on the part of the plaintiff the issue which they were to try. Whether weak or strong, it was their right to pass upon it. It was not proper for the court to wrest this part of the case, more than any other, from the exercise of their judgment. The instruction given overlooked the line which separates two separate spheres of duty. Though correlative, they are distinct, and it is important to the right administration of justice that they should be kept so. It is as much within the province of the jury to decide questions of fact, as of the court to decide questions of law. The jury should take the law as laid down by the court, and give it full effect. But in its application to the facts, and the facts themselves, it is for them to determine. These are the checks and balances which give to the trial by jury its value. Experience has proved their importance. They are indispensable to the harmony and proper efficacy of the system. Such is the law. We think the exception to this instruction was well taken."

In the case of Railroad Co. v. Woodson, 134 U. S. 614, 10 Sup. Ct. 628, it is said:

"It is the settled law of this court that when the evidence given at the trial. with all inferences that the jury could justifiably draw from it. is insufficient to support a verdict for the plaintiff, so that such a verdict, if returned, must be set aside, the court is not bound to submit the case to the jury, but may direct a verdict for the defendant. * * * While, on the other hand, the case should be left to the jury unless the conclusion follows, as matter of law, that no recovery can be had upon any view which can be properly taken of the facts the evidence tends to establish."

In the case of Railroad Co. v. Powers, 149 U. S. 43, 13 Sup. Ct. 748, where the error assigned was the refusal of the court to instruct the jury as requested by the defendant,—in substance, that the deceased was guilty of such contributory negligence as to prevent recovery,—Mr. Justice Brewer, in delivering the opinion of the court, said:

"It is well settled that, where there is uncertainty as to the existence of either negligence or contributory negligence, the question is not one of law, but of fact, and to be settled by a jury; and this whether the uncertainty arises from a conflict in the testimony, or because, the facts being undisputed, fair-minded men will honestly draw different conclusions from them."

Where the facts are not controverted, and where the inference to be drawn from them is certain, necessary, and undisputed, or where there is no evidence tending to establish a necessary element in the case, the trial court may peremptorily direct what verdict should be given; but where, in any case, it is a matter of judgment and discretion, of sound inference, what is the deduction to be drawn from even undisputed facts, where different men, equally sensible and equally impartial, would make different inferences, the law commits such a case to the decision of the jury, under instructions from the court. Railroad Co. v. Stout, 17 Wall. 657; Dunlap v. Railroad Co., 130 U. S. 649, 9 Sup. Ct. 647; Insurance Co. v. Ward, 140 U. S. 76, 11 Sup. Ct. 720; Railway Co. v. Ives, 144 U. S. 408, 12 Sup. Ct. 679; Gardner v. Railroad Co., 150 U. S. 349, 14 Sup. Ct. 140.

The motion in this case, in our judgment, was properly overruled. It was clearly the duty of the railroad company to see to it that this bridge was kept in good repair and in a safe condition; and this duty could not be delegated so as to exonerate the company from liability to its servants for injuries resulting from the omission to perform it, or through its negligent performance. While the duty of the company did not go to the extent of a guaranty of safety, it did require that reasonable precautions be taken to secure safety. It was bound to make reasonably frequent and reasonably thorough inspection of the condition of the timbers which were used in the construction of the bridge. In making such inspection, it was its duty to apply such tests as were ordinary and usual in that business for the purpose of developing any defect which existed in the timbers. If the timbers had become decayed so that the bridge was thereby rendered unsafe, and reasonable inspection would have disclosed that fact, the company was bound to make such inspection. A failure to do so would be negligence, for which it would be responsible to any employé injured in consequence thereof. Railway Co. v. Conroy, 68 Ill. 560; O'Don-

nell v. Railroad Co., 59 Pa. St. 239. The rule is perfectly well settled that an employé has the right to rely upon the presumption that the company has constructed and maintained its railroad in an ordinarily safe manner. Snow v. Railroad Co., 8 Allen, 441; Seaver v. Railroad Co., 14 Gray, 466; Gibson v. Railroad Co., 46 Mo. 163. The testimony as to the condition of a part of the bridge timbers was squarely conflicting. The testimony of five witnesses who testified in the case tended to show that the stringers were more or less decayed where they rested upon the caps, and that some of them were in fact badly rotted, while the testimony of other witnesses who testified in the case tended to show that the stringers were sound. As to the matter of inspection, Mr. Banks, the superintendent of bridges, testified that the proper method of making an inspection of a bridge consisted in digging around the base of the piles, and sounding them with a pick, and looking over the stringers, and sounding them with a bar, or boring into them with an auger, but did not testify that such tests were applied in the case of this bridge, while the testimony of Mr. McClain, division bridge foreman, tended to show that, in making the inspections which were made of this bridge prior to the accident, they did not bore into the timbers with an auger, for the purpose of ascertaining their condition, but that the examination consisted in looking over the bridge. He testified that they could tell, from such examination as was made, whether the stringers were in good condition. In view of the conflicting character of the testimony in relation to the condition of the timbers, and the uncertainty as to whether reasonably careful and thorough inspection had been made in the case of this bridge, the question whether the railway company was negligent in the matter of inspection and keeping the bridge in repair was clearly a question to be determined by the jury. So long as the laws provide for a jury trial of issues of fact, the right should be guarded and preserved, to all parties, where there are controverted facts pertinent to the issues. To apply the doctrine contended for by the plaintiff in error would be to disregard the well-settled rules announced in the cases above cited.

The third assignment relates to the court's instruction as to the measure of damages. That the instruction was correct as far as it went is not questioned. The contention is that it did not go far enough to furnish any rule or criterion whereby the jury could be guided in its deliberations upon that subject. No request for additional instructions was made by the defendant below. The attention of the trial court was in no way called to the fact that it had omitted anything from the instructions in relation to the proper method of estimating the damages. The rule is perfectly well settled that, where there is no request for an instruction, it is not error for the court to omit it. If the plaintiff in error thought that the instruction was either indefinite, or not sufficiently comprehensive, it should have asked that further and more explicit instructions be given. Having failed to do so, the judgment should not be reversed unless it appears from the record that the jury were misled or wrongly directed. The instructions given by the court at the trial are entitled to a reasonable interpretation, and, where the proposition stated is not erroneous, the in-

structions, as a general rule, are not to be regarded as incorrect on account of omissions or deficiences to which the attention of the court was not called by a request for more explicit instructions. Armstrong v. Toler, 11 Wheat. 258; Express Co. v. Kountze, 8 Wall. 342; Shutte v. Thompson, 15 Wall. 151. We cannot say that the jury were either misled or wrongly directed by the instruction here complained of. This assignment of error therefore affords no ground for reversing the judgment. Finding no error in the record, the judgment of the circuit court will be affirmed.