BURTON et al. v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. February 19, 1906.)

No. 2,181.

1. POST OFFICE—DEPOSIT OF OBSCENE MATTER IN MAIL—INDICTMENT—DUPLICITY.

A count for mailing a single copy of a circular declared by Rev. St. § 3893 [U. S. Comp. St. 1901, p. 2658], to be nonmailable, is not double merely because it alleges two reasons why the circular was nonmailable, viz., that it gave information where an obscene book might be obtained and was in itself obscene.

2. SAME—ALLEGATION OF SCIENTER—MOTION IN ARREST OF JUDGMENT.

An indictment charging the defendant with "willfully, unlawfully, wrongfully, and knowingly" mailing an obscene circular giving information where an obscene book might be obtained, the sufficiency of which is not questioned before verdict, is, upon motion in arrest of judgment, to be taken as meaning that the circular was mailed with knowledge of its contents and of the contents of the book respecting which it gave information.

3. CRIMINAL LAW—REQUEST AT CONCLUSION OF GOVERNMENT'S EVIDENCE FOR DIRECTED VERDICT OF NOT GUILTY—WAIVER.

Where at the conclusion of the government's evidence a defendant requests the court to direct a verdict of not guilty, but instead of standing upon the request and his exception to its denial produces evidence in his defense, he waives all right to insist that the verdict should be rested solely upon the evidence produced by the government.

4. POST OFFICE—"CAUSING" OBSCENE MATTER TO BE DEPOSITED IN THE MAIL—RESPONSIBILITY OF ONE PARTNER FOR ACT OF ANOTHER.

Where, in the execution of their joint enterprise, one partner deposits a nonmailable circular in the mail by the authorization of another, or with his knowledge and acquiescence, the latter causes the circular to be so deposited within the meaning of Rev. St. § 3893 [U. S. Comp. St. 1901, p. 2658.]

5. SAME—OBSCENE MATTER—TEST OF OBSCENITY.

Where the acts described and the ideas conveyed in a book are calculated to deprave the morals of the reader by exciting sensual desires and libidinous thoughts, the book is obscene, under Rev. St. § 3893 [U. S. Comp. St. 1901, p. 2658]; and it is immaterial that the information conveyed is accurate and scientific and tends to prevent disease and other

ills resulting from existing ignorance upon the topics discussed, that as a whole the book is calculated to be of value to the medical practitioner and to men and women in the marriage relation, that its publication was approved by several physicians, and that some portions of it are extracts from standard medical works.

6. SAME—DEFENDANT'S BELIEF.

The inquiry under Rev. St. § 3893 [U. S. Comp. St. 1901, p. 2658], is whether or not the circular or book charged to have been obscene was in fact of that character, and if it was, and the defendant knew its contents at the time of the act charged, it is immaterial that he himself did not regard it as of that character. Everyone who uses the mail for distributing circulars or advertising books must take notice of what is obscene.

7. SAME—NOT NECESSARY THAT ENTIRE BOOK BE CONSIDERED.

Whether or not a book is obscene, under Rev. St. § 3893 [U. S. Comp. St. 1901, p. 2658], is to be determined upon a consideration of such parts of it as are claimed to be of that character, together with so much of the context as may be necessary to a proper understanding of them, but not necessarily upon an inspection of the entire book and with reference to all of its contents.

(Syllabus by the Court.)

In Error to the District Court of the United States for the District of Minnesota.

Charles W. Somerby and Victor Welch (Fred V. Brown, on the brief), for plaintiffs in error.

Charles C. Houpt, U. S. Atty., and Paul A. Ewert, Asst. U. S. Atty.

Before VAN DEVANTER, Circuit Judge, and CARLAND and POLLOCK, District Judges.

VAN DEVANTER, Circuit Judge. This is a writ of error to review the conviction of Olly D. Burton and Charles W. Malchow under section 3893 of the Revised Statutes [U. S. Comp. St. 1901, p. 2658] for knowingly depositing and causing to be deposited in the postoffice at Minneapolis, for mailing and delivery, a printed circular declared by that section to be nonmailable. The indictment contained two counts, which differed only in respect of the name and address of the person to whom the circular was mailed. The first count, omitting the title and title page of the book therein named, the name and address of the person to whom the circular was mailed, and the title page of the circular, all of which are fully set forth, is as follows:

"The grand jurors of the United States of America within and for said district and division, in the name and by the authority of the said United States of America, upon their oaths present, that heretofore, to wit, on the 15th day of August, A. D. 1904, at the city of Minneapolis, in the county of Hennepin, in the state and district of Minnesota, and within the jurisdiction of this court, Olly D. Burton and Charles W. Malchow, both late of said district, and each of them, did then and there willfully, unlawfully, wrongfully, and knowingly deposit and cause to be deposited for mailing and delivery at the post office of the said United States at said city of Minneapolis, Minnesota, a certain printed pamphlet, circular, and notice giving information directly where, how, and of whom and by what means a certain obscene, lewd, and lascivious book of an indecent character, entitled * * * may be obtained and procured, and which said obscene, lewd, and lascivious book of an indecent character contained on the third page of said book the following: * * * and which said book contained 308 pages of certain obscene, lewd, las-

civious, and indecent matter in print, of too great length and of too indecent character to be here set forth in full, which said printed pamphlet, circular, and notice so deposited and caused to be deposited for mailing and delivery by the said Olly D. Burton and Charles W. Malchow, and each of them, as aforesaid, was then and there inclosed in an envelope, postage prepaid thereon, which said envelope contained said printed pamphlet, circular, and notice as aforesaid and was addressed as follows: * * * and which said printed pamphlet, circular, and notice then and there contained in said envelope contained on the first page of said printed pamphlet, circular, and notice the following: * * * and which said printed pamphlet, circular, and notice then and there contained 20 pages of certain obscene, lewd, lascivious, and indecent matter in print of too great length and of too indecent character to be here set forth in full, which is against the peace and dignity of the United States and contrary to the form of the statute in such case made and provided."

The defendants, conceiving that each count charged two distinct offenses, because the printed circular was alleged to give information as to where, how, of whom, and by what means an obscene book might be obtained, and to contain in itself obscene matter, moved that the prosecutor be required to elect upon which of the two charges he would proceed. The motion was denied, and this is assigned as error. The ruling was right. Whether the circular contained one or both of the matters alleged, it was nonmailable under section 3893 of the Revised Statutes, the latter portion of which provides for the punishment of "any person who shall knowingly deposit, or cause to be deposited, for mailing or delivery, anything declared by this section to be nonmailable." The act charged in each count was the mailing of a single copy of the circular, and that constituted but one offense.

After they were found guilty by the jury the defendants moved in arrest of judgment upon the ground that the indictment did not directly allege that they knew the nonmailable character of the circular when it was deposited in the post office, and complaint is made of the denial of the motion. This ruling was also right. The sufficiency of the indictment was not questioned until after the verdict, and then the words "willfully, unlawfully, wrongfully, and knowingly," used to describe the act charged, were to be taken in their broadest sense; that is, as applying to all that was expressed in respect of that act, and therefore as imputing to the defendants knowledge of the contents of the circular and of the book therein advertised. Rosen v. United States, 161 U. S. 29, 16 Sup. Ct. 434, 40 L. Ed. 606; Price v. United States, 165 U. S. 311, 17 Sup. Ct. 366, 41 L. Ed. 727; United States v. Chase (C. C.) 27 Fed. 807; United States v. Clark (C. C.) 37 Fed. 106; United States v. Nathan (D. C.) 61 Fed. 936.

At the conclusion of the evidence for the prosecution the defendant Malchow requested the court to instruct the jury to return a verdict of not guilty as to him, on the ground that no evidence had been produced which tended to show that he was in any way responsible for the mailing of the circular. The request was denied, and he now seeks to press an exception taken to that ruling. But as he did not stand upon his request and exception, but proceeded to offer evidence in his defense, he waived all right to insist that the verdict should be rested solely upon the evidence produced by the prosecution. This rule is uniformly applied in civil cases. Accident Ins. Co. v. Crandal,

120 U. S. 527, 530. 7 Sup. Ct. 685, 30 L. Ed. 740; Robertson v. Perkins, 120 U. S. 233, 236, 9 Sup. Ct. 279, 32 L. Ed. 686; Runkle v. Burnham, 153 U. S. 216, 222, 14 Sup. Ct. 837, 38 L. Ed. 694; Hansen v. Boyd, 161 U. S. 397, 403, 16 Sup. Ct. 571, 40 L. Ed. 746; Chicago Great Western Ry. Co. .v. Healy, 30 C. C. A. 11, 86 Fed. 245. And no reason is perceived why it is not equally applicable to criminal cases.

When the production of evidence was finally concluded Malchow's request for a directed verdict was renewed, and was again denied; and, error being assigned upon this ruling, it becomes necessary to consider whether or not there was such evidence of responsibility on his part for the mailing of the circular as justified the submission of that matter to the jury. But the question must be determined upon a consideration of all the evidence, and not merely of that produced by the prosecution. It was shown that the two copies of the circular described in the indictment were deposited in the post office by the defendant Burton, that Malchow was the author of the book advertised in the circular, and that the book was published and was being advertised and sold under the following written agreement between the defendants:

"This agreement, made and entered into this 12th day of March, 1904, between C. W. Malchow, party of the first part, and O. D. Burton, party of the second part, both of the city of Minneapolis, in the state of Minnesota, witnesseth: That said parties, for the purpose of procuring the printing, and publishing and sale of a book written by said party of the first part, known as [the title will be omitted], in consideration of a mutual covenant and agreement of each other hereby enter into the following agreement in reference to the same, to wit:

"I. It is mutually agreed that this agreement shall be limited to the printing, publication, and sale of one edition of said book of the minimum number of 3,000 copies.

"II. It is mutually agreed that the party of the first part shall furnish the manuscript for the said book and shall read and correct the proofs of the same.

"III. The party of the second part agrees to pay for the cost of printing and binding said book and of all material and labor used in said printing and binding at a cost to himself not exceeding $2,000. Said party of the second part agrees that the quality of paper and binding and the typographical work of the publication shall be of high grade, and further agrees that the party of the first part shall not assume nor be liable for any of the expenses in connection with the printing of said book.

"IV. It is mutually agreed that when the edition is printed and ready for sale, that both parties shall become joint and equal owners of the said edition, the plates and copyright thereof.

"V. It is further mutually agreed that the said party of the second part shall canvass said book, procure subscriptions of same, shall sell and deliver same, make all collections and generally do all things necessary to be done for the publication and sale of said book. Said party of the second part shall devote his individual time to said work as soon as the books are ready for sale and until the edition is exhausted.

"VI. It is agreed that expenses attendant upon said publication of said book including all printing of circulars, prospectus, advertisements, postage and other incidental work and disbursements necessarily incurred in the publication of said book, such as may hereafter be agreed upon by the parties hereto, shall be paid out of the proceeds of the sale of said book; but personal expenses of the party of the second part shall not be paid out of the proceeds of the sale. After said expenses enumerated above attendant upon the publication, have been deducted, the balance shall be divided equally, an accounting being made upon the first of every month by the parties hereto.

"VII. If either party hereto shall fail for a reasonable time after the execution of this agreement to fulfill any of the material terms thereof, this contract may be dissolved upon ten days' notice by either party to the other and an accounting will thereupon be had between the parties; and if at the time of the dissolution of the contract, the manuscript shall not have been printed, it shall be returned to the said party of the first part."

Two witnesses testified that the defendants had spoken of their relation under this agreement as that of partners under the name of "The * * * Company," which was the name of the publishers as stated in the book and of the sellers as stated in the circular. The book was copyrighted by them in that name. It was also shown that the defendants, one of whom was a publisher and the other a doctor, resided in Minneapolis, where the business of advertising and selling the book was carried on; that Burton had prepared two circulars advertising the book which were substantially alike; that he began distributing 25,000 copies of the first circular through the mail about the middle of May, 1904; that in the early part of July following, the first circular being exhausted by that means of distribution, he began distributing through the mail 65,000 copies of the second circular, which is the one referred to in the indictment; and that at the time of the acts of mailing charged in the indictment, August 15, 1904, the sales of the book amounted to something near 3,000 copies.

In answering direct questions on the subject both defendants testified that Malchow had absolutely nothing to do with the mailing of the circulars mentioned in the indictment or with the mailing of any circulars concerning the book, but this was not all of the testimony given by them in that connection. Burton, after stating that the names of persons to whom the circulars were addressed were procured from directories, testified:

"Q. What directories? A. The physicians' list we used more extensively than anything else. * * * Q. What other lists, if any, did you use? A. We used a list of attorneys and a list of bankers."

And again:

"Q. What does Exhibit 4 contain? A. It contains a list of subscribers to whom we mailed books."

He further testified:

"Q. He [Malchow] knew you were mailing these circulars? A. Perhaps he knew it; yes."

And Malchow testified, his testimony being given October 15, 1904:

"Q. Did you know, doctor, that the mails were being used to advertise and distribute this book? A. At what time do you mean? Q. At any time. A. Yes; lately I knew they were, but I did not know it in the beginning. I didn't know how the business was being conducted. That was not my part of the business. I paid no attention to it. Q. Did you know of the preparation of this circular, of the printing of this circular? A. I don't understand what you mean. Q. Did you ever see this circular that is in evidence? A. Yes, sir. Q. Did you see these circulars about the time they were printed? A. Afterwards I did. Yes, sir; about that time. Q. When did you first see these circulars? A. I can't say when I first saw them, some time after they were printed, I presume. Q. Soon after they were printed? A. Yes, sir. Q. You knew these circulars were being printed for the purpose of advertising this book? A. Yes, sir."

We think the evidence and the inferences which might be reasonably drawn from it required that the question of Malchow's responsibility for the mailing of the circular be submitted to the jury. It was not essential that he should have directly participated in the act of mailing, for, if he caused it to be done, he was within the terms of the statute; and in legal contemplation he did cause it to be done, if by his authorization, or with his knowledge and acquiescence, it was done by Burton in the execution of their joint enterprise. The written agreement made the defendants partners in the publication, advertisement, and sale of the book. Ward v. Thompson, 22 How. 330, 334, 16 L. Ed. 249; Berthold v. Goldsmith, 24 How. 536, 541, 16 L. Ed. 762; Meehan v. Valentine, 145 U. S. 611, 618, 12 Sup. Ct. 972, 36 L. Ed. 835. And while this would not make Malchow criminally responsible for all that was done by Burton, it does have an important bearing upon whether or not Burton was acting upon Malchow's authorization or with his knowledge and acquiescence. The agreement contains in the sixth paragraph a provision respecting postage which makes it plain that the parties contemplated the use of the mail in some manner. The provision is somewhat indefinite, but the express mention of the item of postage tends to show that it was expected to be of some moment, and the connection in which it is mentioned tends to show that it was contemplated the book would be advertised, and subscriptions therefor solicited, by means of circulars distributed through the mail. What was done by the parties while they were engaged in executing the agreement also tends to shed light upon what they contemplated when it was made. The circulars were actually distributed through the mail. Their distribution by that means began shortly after the first circular was prepared, and was actively continued to at least the time of the acts charged in the indictment. Of a matter which so closely affected the sale of the book and the revenue which Malchow would receive therefrom, it could not lightly be assumed that he was ignorant, particularly considering the stipulation for a monthly accounting of the expenses and receipts of the business and his opportunities for knowing what was being done. Then the testimony of both Burton and Malchow respecting the latter's knowledge of what was done, although somewhat indefinite, showed that at some time he knew the circulars were being sent through the mail, and there was no suggestion that this met with any opposition on his part. Upon the whole we think it is not an unreasonable conclusion from the evidence that the defendants contemplated, when entering into their partnership agreement, that the mail would be used in advertising the book, and that what was actually done by Burton in that connection was done with the knowledge and acquiescence of Malchow. In this view of the evidence the request for a directed verdict was properly denied.

The defendants insisted that the book was not obscene, and to sustain that contention sought to show that the contents consisted of accurate and scientific information on the topics discussed; that ignorance upon these topics is quite general; that this ignorance frequently leads to disease, physical infirmity, unhappiness and misery, which the information given in the book would tend to prevent;

that as a whole the book is calculated to be of value to the medical practitioner and to men and women in the marriage relation; that prior to its publication the manuscript was submitted to several physicians, who approved its publication; and that some portions of the text are extracts from standard medical works. All of this was excluded, and, we think, properly so. The book itself was in evidence. It was not a communication from a doctor to his patient, nor a work designed for the use of medical practitioners only. There was no dispute as to its contents, nor was there any difficulty in understanding the acts described and the ideas conveyed. If these were calculated to deprave the morals of the reader by exciting sensual desires and libidinous thoughts, the book was obscene, even though each of the matters sought to be shown was true. United States v. Bennett, 16 Blatchf. 338, Fed. Cas. No. 14,571; United States v. Clarke (D. C.) 38 Fed. 500, s. c. 38 Fed. 732; United States v. Harmon (D. C.) 45 Fed. 414, 422. The evidence was therefore immaterial. It may be that the court upon an inspection of the book should have pronounced it obscene as a matter of law. Rosen v. United States, 161 U. S. 29, 42, 16 Sup. Ct. 434, 40 L. Ed. 606; Swearingen v. United States, 161 U. S. 446, 450, 16 Sup. Ct. 562, 40 L. Ed. 765. But it is not necessary to determine that question.

While it is charged in the indictment that the circular itself was obscene, that feature of the indictment was practically ignored at the trial, and in the instructions to the jury, and therefore need not be considered now. As proof that they acted in good faith and in the honest belief that the circulars were mailable, the defendants sought to introduce in evidence two letters written before any circulars were mailed. The first was written by Burton to the Post Office Department. In addition to inclosing one of the circulars, it declared the book would be scientific and not obscene, stated the purpose to distribute the circular through the mail, and especially among "what might be termed society and club women," expressed fear lest "some religious or purity crank" might consider it nonmailable, and inquired whether it was mailable. The second letter was an answer by the Post Office Department to the first, and merely suggested the propriety of consulting paragraph 497 of the postal laws and regulations on file at the Minneapolis post office, which sets forth section 3893 of the Revised Statutes. Complaint is made of the exclusion of these letters. The claim of good faith and honest belief could have been made with better grace if a copy of the book had been transmitted with the letter of inquiry, and if upon receipt of the answer the designated paragraph of the postal laws and regulations had been consulted. Neither of these things is claimed to have been done. But for another reason the claim of good faith and honest belief is unavailing. As was said in Rosen v. United States, 161 U. S. 29, 41, 16 Sup. Ct. 434, 438, 40 L. Ed. 606:

"The inquiry under the statute is whether the paper charged to have been obscene, lewd, and lascivious was in fact of that character, and if it was of that character and was deposited in the mail by one who knew or had notice at the time of its contents, the offense is complete, although the defendant himself did not regard the paper as one that the statute forbade to be carried

in the mails. Congress did not intend that the question as to the character of the papers should depend upon the opinion or belief of the person who, with knowledge or notice of its contents, assumed the responsibility of putting it in the mails of the United States. The evils that Congress sought to remedy would continue and increase in volume if the belief of the accused as to what was obscene, lewd, and lascivious was recognized as the test for determining whether the statute had been violated. Every one who uses the mails of the United States for carrying papers or publications must take notice of what, in this enlightened age, is meant by decency, purity, and chastity in social life, and what must be deemed obscene, lewd, and lascivious."

There was no error in the exclusion of the letters or of other evidence offered for the same purpose.

The defendants requested the court to charge the jury that the character of the book should not be judged by any extract or extracts therefrom, but upon an inspection of the whole book and with reference to all of its contents. The instruction was refused, and this is assigned as error. Of course, the character of the book was not to be judged by any brief extracts therefrom, the proper understanding of which depended upon their being taken in connection with the context; nor was it necessary to consider more of the context than was essential to a proper understanding of what was claimed to be obscene. United States v. Bennett, 16 Blatchf. 338, Fed. Cas. No. 14,571. The book comprised over 300 pages. It was not claimed to be obscene throughout. The portions deemed to be of that character were read to the jury by the prosecution, and other portions deemed essential to a proper understanding of what was read by the prosecution were read to the jury by the defendants. Thus much of the book was practically and properly eliminated from consideration. In this situation to have given the instruction requested would not only have tended to confuse the jury, but also to impress them with the mistaken idea that the book was not obscene unless its entire contents were of that character. The instruction was properly refused.

Other questions were discussed by counsel, but they have been found to relate to rulings which were acquiesced in because not excepted to at the time (Rodriguez v. United States, 198 U. S. 156, 165, 25 Sup. Ct. 617, 49 L. Ed. 994), or which were so plainly right as to require no separate notice.

No error is disclosed by the record, and the judgment is affirmed.