## UNITED STATES v. GREAT NORTHERN RY. CO.

(Circuit Court of Appeals, Eighth. Circuit. April 20, 1914.)

No. 3881.

1. ALIENS § (56*)—OFFENSES AGAINST IMMIGRATION LAWS—IMPORTATION OF CONTRACT LABORERS.

Immigration Act Feb. 20, 1907, c. 1134, § 2, 34 Stat. 898 (U. S. Comp. St. Supp. 1911, p. 500), provides for the exclusion of the class of "aliens" therein specified, including contract laborers induced or solicited to migrate to this country by offers or promises of employment or in consequence of agreements to perform labor. Section 4 makes it a misdemeanor to prepay the transportation or in any way to assist or encourage the importation or migration of any contract laborer. Section 5 provides that for every violation of section 4 the person violating it shall forfeit $1,000, which may be sued for and recovered by the United States or by any person including any such "alien" promised labor or service, and that separate suits may be brought for each "alien." *Held*, that a person or corporation does not become liable to the penalty by assisting or encouraging contract laborers other than aliens to migrate into this country, especially in view of the title and purpose of the whole act which deals most exclusively with the immigration of aliens.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 113–116; Dec. Dig. § 56.*]

2. ALIENS (§ 56*)—OFFENSES AGAINST IMMIGRATION LAWS—IMPORTATION OF CONTRACT LABORERS.

Under Immigration Act Feb. 20, 1907, c. 1134, § 5, 34 Stat. 900 (U. S. Comp. St. Supp. 1911, p. 503), providing that for every violation of the preceding section the persons, corporations, etc., violating it by "knowingly" assisting, encouraging, or soliciting the migration or importation of any contract laborer into the United States, shall forfeit $1,000, knowledge of all the essential facts constituting the wrongdoing, including knowledge of the essential fact that the contract laborer is an alien, is a necessary condition to liability.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 113–116; Dec. Dig. § 56.*]

3. ALIENS (§ 58*)—OFFENSES AGAINST IMMIGRATION LAWS—IMPORTATION OF CONTRACT LABORERS.

Where a trainmaster at Minot, N. D., in response to an inquiry from a person residing in Manitoba, relative to the possibility of procuring employment, sent him a pass stating that if he would come over they might be able to use him, and, upon his arrival, employed him as a brakeman, after further negotiations, the facts did not show knowledge on the part of the railroad company that he was an alien, so as to subject it to the penalty under Immigration Act Feb. 20, 1907, c. 1134, § 5, 34 Stat. 900 (U. S. Comp. St. Supp. 1911, p. 503), since whatever inference might be drawn if the importation is from a European country, the conditions existing between the United States and the border provinces of British America are such that no presumption of knowledge arose from the facts that the employé actually was an alien and was induced to migrate to this country by the railroad company.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 113, 114; Dec. Dig. § 58.*

Importation of contract labor, see note to United States v. Parsons, 66 C. C. A. 133.]

Smith, Circuit Judge, dissenting in part.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In Error to the District Court of the United States for the District of North Dakota; Charles F. Amidon, Judge.

Action for a penalty by the United States against the Great Northern Railway Company. Judgment dismissing the action, and the United States brings error. Affirmed.

Edward Engerud, of Fargo, N. D. (M. A. Hildreth, of Fargo, N. D., on the brief), for the United States.

Murhpy & Toner, of Grand Forks, N. D., for defendant in error.

Before HOOK, ADAMS, and SMITH, Circuit Judges.

ADAMS, Circuit Judge.   [1] This is a writ of error sued out by the United States to review a judgment of the District Court of North Dakota dismissing an action brought to recover the penalty of $1,000 prescribed by section 5 of the Immigration Act, approved February 20, 1907 (34 Stat. c. 1134, p. 898 [U. S. Comp. St. Supp. 1911, p. 499]). The pertinent portions of that act follow:

"Sec. 2. The following classes of aliens shall be excluded from admission into the United States: * * * Persons, hereinafter called contract laborers, who have been induced or solicited to migrate to this country by offers or promises of employment or in consequence of agreements, oral, written, or printed, express or implied, to perform labor in this country of any kind, skilled or unskilled. * * *

"Sec. 4. It shall be a misdemeanor for any person, company, partnership, or corporation, in any manner whatsoever, to prepay the transportation or in any way to assist or encourage the importation or migration of any contract laborer or contract laborers into the United States. * * *

"Sec. 5. For every violation of any of the provisions of section four of this act the persons, partnership, company, or corporation violating the same, by knowingly assisting, encouraging, or soliciting the migration or importation of any contract laborer into the United States shall forfeit and pay for every such offense the sum of one thousand dollars. *. * *"

The complaint in this case charged that the defendant, the Great Northern Railway Company, knowingly assisted and encouraged the immigration of one Graham, from the city of Beverly in the Province of Manitoba and Dominion of Canada, to the city of Minot, in the state and district of North Dakota, upon the understanding and agreement that Graham should enter the employ of the defendant as a brakeman.

After issue was joined, trial by jury was duly waived, and the cause submitted to the court for decision upon the following agreed facts:

"On the 4th day of May, 1910, at Minot, N. D., one Paul F. Keating, trainmaster of the defendant upon what is known as the Minot Division of the defendant, wrote and mailed to one G. N. Graham, an alien at Beverly, Manitoba, a letter as follows, to wit: 'Mr. G. N. Graham, Beverly, Man.   Dear Sir: Replying to your letter of Apr. 29th asking for a position on this division, will say that I am inclosing pass for you, and if you come over, we may be able to use you.   Yours truly, Paul F. Keating, Trainmaster.'   The said letter was in reply to a letter or inquiry received from said Graham asking in reference to the possibility of procuring employment with the defendant. Pursuant to said letter, the said Graham came to Minot from said Beverly, Manitoba, and used the transportation inclosed in said letter, and upon arrival at Minot entered into further personal negotiations with the defendant and its trainmaster in reference to procuring employment, and, his record and qualifications proving satisfactory, was then and there employed by the defendant as a freight brakeman:   The said Graham, prior to coming to Minot

and at the time of the correspondence above referred to, was a freight brakeman; that is he (said Graham) had theretofore been employed as a brakeman upon freight trains of various railroad companies, and was experienced in said line of business."

The court on these facts held that, as there was no showing that the defendant railway company knew that Graham was an alien, the government could not recover and dismissed the action.

The assignments of error and argument of counsel challenge the correctness of this ruling for two reasons: (1) Because no such knowledge was a prerequisite to liability for the penalty, and (2) if it were so the agreed state of facts disclosed such knowledge on the part of the defendant.

Counsel for the government make this argument: That a "contract laborer," as defined by section 2 of the act, is "a person who has been induced or solicited to migrate to this country by offers or promises of employment or in consequence of agreements * * * to perform labor in this country, * * * " and that a "contract laborer" as so defined is the subject of section 5, which denounces the penalty. That section accordingly denounced its penalty against those who violated the provisions of section 2 by knowingly assisting, encouraging, or soliciting the migration into this country of "persons who have been induced or solicited to migrate into this country by offers or promises of employment, or in consequence of agreements to perform labor in this country," and it is contended that the act penalizes every one who knowingly so assists, encourages, or solicits the migration or importation into this country of any person, alien or not, provided only he comes here by reason of offers or promises of employment, etc.; that a person so defined is "the contract laborer" referred to in section 5 of the act.

Lest it be thought we have misapprehended the contention of the government, we quote from its counsel's brief as follows:

"It (the act) penalizes every one who knowingly assists, encourages, or solicits the migration or importation into this country of any person who comes by reason of offers or promises of employment. As construed by the trial court, however, the act is made to read in substance as follows: Any person who violates the act by knowingly assisting, etc., the migration or importation of any contract laborer, knowing such contract laborer to be an alien, shall be liable to the penalty."

The issue presented to us is therefore a sharp one: Does the act denounce the penalty against a person or corporation who knowingly assists or encourages any contract laborer to migrate into this country by offers of employment, etc., or is it only against a person or corporation who knowingly assists an alien contract laborer by offers of employment, etc., to so migrate?

If regard be had to the mere letter of the act of Congress it might be said that the penalty, as denounced by section 5 is: For assisting the migration of "any contract laborer" and that such contract laborer as defined by section 2 is one "who has been induced or solicited to migrate to this country by offers or promises of employment," etc. * * * On this literal view of a few words of the act, the argument is made that one incurs the penalty, if he assists or encourages the im-

migration of any one, whether alien or not, by offers or promises of employment, etc. But this kind of an argument does not appeal to us. The whole act discloses that it deals most exclusively with the subject of immigration of aliens.

The title to the act is "An act to regulate the immigration of aliens into the United States." The opening sentence of section 2 is: "The following classes of aliens shall be excluded from admission into the United States," among them "persons, hereinafter called contract laborers, who have been induced or solicited to migrate to this country by offers or promises of employment or in consequence of agreements, oral, written or printed, express or implied, to perform labor in this country of any kind. * * *"

Again in section 5 of the act which denounces the penalty for violating the provisions of section 4 provision is found for the recovery of the penalty by the United States or any person who might first bring the action "including any such alien thus promised labor or service of any kind as aforesaid; * * * and separate suits may be brought for each alien thus promised labor or service of any kind as aforesaid."

In view of these provisions and of the manifest purpose of the act as disclosed by all its provisions, we have no hesitancy in holding the contention of the government to be untenable.

[2] From the opinion of the learned trial judge preserved in the record it seems that it must have been contended at the trial that the adverb "knowingly" found in section 5 of the act modified the immediately following words "assisting, encouraging or soliciting" only, and did not require knowledge of any other facts constituting the essence of the wrongdoing and therefore could not be construed as requiring knowledge of the essential fact that the contract laborer was an alien. But counsel for the government now abandon such contention. They say:

"We concede that the adverb 'knowingly' as it appears in this statute goes beyond the mere verb and includes broadly all that is expressed in the full act charged to have been done. We therefore concede that there is no liability for the statutory penalty unless it appears that the defendant not only knowingly did the acts of assistance, encouragement, etc.; but also that he knew the person assisted to be one who was coming or was being brought into the country in consequence of promises, etc., of employment."

This concession, however, is unnecessary, for we think it very plain that the word "knowingly" as used in section 5 necessarily makes knowledge of all the essential facts constituting the wrongdoing a necessary prerequisite to liability for the penalty. Rosen v. United States, 161 U. S. 29, 16 Sup. Ct. 434, 480, 40 L. Ed. 606; Price v. United States, 165 U. S. 311, 17 Sup. Ct. 366, 41 L. Ed. 727; Burton v. United States, 73 C. C. A. 243, 142 Fed. 57. It must therefore be held that knowledge of the essential fact that the contract laborer was an alien is a necessary condition to liability for the penalty. See Grant Bros. Construction Co. v. United States, 232 U. S. 647, 34 Sup. Ct. 452, 58 L. Ed. ——, just decided by the Supreme Court.

[3] Answering the second assignment of error, we are of opinion that the agreed facts failed to disclose knowledge by defendant of the alienage of Graham at the time it secured his services. The con-

tention is that because Graham was actually an alien and was induced to migrate to this country by defendant the presumption must be indulged that the defendant knew him to be an alien.

To this we are unable to agree. The learned trial judge, after alluding to what inference might be drawn if the importation was from a European country, made this observation:

"But in view of the conditions existing between the United States and the border provinces of British America, I do not think that such an inference can properly be drawn in this case."

And so it seems to us that, where the employer and employé are located as in this case on opposite sides of and near to an international boundary line over which people must necessarily pass and repass with much frequency and for a variety of purposes, no presumption of fact arises that the employé is a citizen of that country in which he may on a given occasion be found.

We think the agreed facts on which this case was submitted to the trial court failed to disclose that the defendant knew Graham was an alien when it induced him to come to this country for work, and for that reason the action was properly dismissed.

The judgment is affirmed.

SMITH, Circuit Judge (concurring). I cordially concur in all that is said in the foregoing opinion with reference to the first assignment of errors. That is, in such cases to warrant a finding for the government it must appear that the defendant assisted or encouraged the migration here of one he knew to be an alien.

I cannot wholly agree to what is said about the second assignment of errors. There is no dispute that Graham was an alien. We start with the proposition that it was essential for the government to prove that the defendant knew that Graham was an alien. There was an agreed statement of facts, but there was no agreement as to what inferences should be drawn from the facts agreed to.

Knowledge can seldom be proven by direct evidence; it is usually proven by circumstances.

Whatever rule is here declared with reference to Canada and North Dakota must in my judgment be equally applicable to Old and New Mexico. While in both Canada and North Dakota the language generally spoken is English, there are in both countries many foreigners chiefly from Northern Europe. On the other hand, in Old and New Mexico the majority of the people are of Spanish descent and as yet speak the Spanish tongue. In both there are a considerable number of Americans in the population.

Prepared to indulge every presumption in favor of innocence, I concede that if a man carrying on railroad building or operation in New Mexico should be traveling in Old Mexico and there met a Mexican who said he was an American and wanted employment on the American side, and the person thus approached believed the Mexican and employed him, he would not be guilty of knowingly assisting or encouraging the migration to this country of an alien; but if without anything to mislead him the person in question wrote to a Mexican in

Mexico to come over and he would be given employment, a jury would be justified and it would be its duty to find that the man who thus wrote knew that the party was an alien.

If I am not right in this, it would in substantially all cases be impossible to prove knowledge, and there is nothing in the statute to prevent this country from being flooded with the cheap peons of Old Mexico. under contract.

In this case while it would normally have been for the jury to say from the fact that this man was an alien and wrote from a foreign land asking employment and the cautious character of the reply of the defendant's trainmaster whether the defendant knew that Graham was an alien, so a jury being waived, it was for the court to find from the evidence whether defendant knew that fact. If personally called upon to pass upon that question, I would have found there was knowledge upon the defendant's part from the circumstances; but the District Court found otherwise, and, as its finding has the force and effect of the finding of a jury, I am not so sure that it was wrong that I feel its decision should be reversed.

I therefore concur in the result, but must make it plain that if the finding had been the other way I should have deemed it the duty of this court to have affirmed the judgment.