### SHAFFER v. UNITED STATES.*

(Circuit Court of Appeals, Ninth Circuit. February 10, 1919.)

No. 3220.

1. ARMY AND NAVY ⬤�longdash40—ESPIONAGE ACT—USE OF MAILS.
   It cannot be said as matter of law that use of the mails by defendant when the United States was at war in distributing copies of a book in which the author asserted that patriotism was murder and the spirit of the devil, that the war was wrong and its prosecution a crime, was not their use for transmission of nonmailable matter willfully intended and calculated to obstruct the recruiting and enlistment service, which constituted an offense under Espionage Act, tit. 12, § 3 (Comp. St. 1918, § 10401c).

2. WAR ⬤�longdash4—ESPIONAGE ACT—UNLAWFUL USE OF MAILS.
   Evidence *held* to sustain a conviction for use of the mails for transmission of matter declared nonmailable by Espionage Act, tit. 12 (Comp. St. 1918, §§ 10401a–10401d).

In Error to the District Court of the United States for the Northern Division of the Western District of Washington; Jeremiah Neterer, Judge.

Criminal prosecution by the United States against Frank Shaffer. Judgment of conviction, and defendant brings error. Affirmed.

The plaintiff in error was convicted under a count of an indictment which alleged in substance the following: That on March 7, 1918, when the United States was at war with the Imperial German Government, the defendant did willfully, knowingly, unlawfully, and feloniously use and attempt to use the mails and postal service of the United States for the transmission of matter declared to be nonmailable by the act of Congress approved June 15, 1917 (40 Stat. 230, c. 30, tit. 12 [Comp. St. 1918, §§ 10401a–10401d]), in this:

⬤�longdashFor other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
*Rehearing denied June 2, 1919.

That he did then and there willfully, knowingly, unlawfully, and feloniously deposit and cause to be deposited in the post office of the United States at Everett, Wash., an envelope bearing the address of "H. H. Bettinger, Granite Falls, Washington," and containing a book and publication containing matter advocating and urging treason and forcible resistance to the act of Congress approved May 18, 1917 (40 Stat. 76, c. 15 [Comp. St. §§ 2044a–2044k]), and urging and attempting willfully to cause insubordination, disloyalty, mutiny, and refusal of duty in the military and naval forces of the United States, and urging and attempting willfully to obstruct recruiting and enlistment in the service of the United States, to the injury of said service and of the United States, which said book was entitled "The Finished Mystery," pages 247 to 253 whereof are particularly filled with treasonable, disloyal, and seditious utterances, among other things setting forth the following:

"Standing opposite to these Satan has placed three great untruths, human immortality, the Anti-Christ, and a certain delusion which is best described by the word patriotism, but which is in reality forces of murder, the spirit of the very devil. It is this last and crowning feature of Satan's work that is mentioned first. ✵ ✵ ✵ If you say it is a war of defense against wanton and intolerable aggression, I must reply that every blow which we have endured has been primarily a blow directed, not against ourselves, but against England, and that it has yet to be proved that Germany has any intention or desire of attacking us. * * * The war itself is wrong. Its prosecution will be a crime. There is not a question raised, an issue involved, a cause at stake, which is worth the life of one blue-jacket on the sea or one khaki-coat in the trenches."

William R. Bell, of Seattle, Wash., for plaintiff in error.

Robert C. Saunders, U. S. Atty., Clarence L. Reames, Sp. Asst. Atty. Gen., and Hinman D. Folsom, Jr., Attorney for Department of Justice, all of Seattle, Wash., for the United States.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

GILBERT, Circuit Judge (after stating the facts as above). Error is assigned to the refusal of the court to instruct the jury to return a verdict in favor of the defendant. That assignment presents two questions: First, does the book constitute nonmailable matter, within the definition of the act of Congress approved June 15, 1917? and, second, was there absence of evidence to show that the plaintiff in error used or attempted to use the mails of the United States for the transmission of the book?

[1] The plaintiff in error contends that the publication complained of contains no false statement, but only the opinion of the author of the book that patriotism is identical with murder and the spirit of the devil, that war is a crime, and the argument that it was yet to be proved whether Germany had any intention or desire of attacking the United States. It is true that disapproval of war and the advocacy of peace are not crimes under the Espionage Act; but the question here is not whether the publication contained expressions only of opinion, and not statements of fact, but it is whether the natural and probable tendency and effect of the words quoted therefrom are such as are calculated to produce the result condemned by the statute.

The act of June 15, 1917, declares to be nonmailable every letter, book, etc., "of any kind in violation of any of the provisions of this act." The act mentions, among other things, the willfully causing or attempting to cause insurrection, disloyalty, mutiny, or refusal of

duty in the military or naval forces, or willfully obstructing the recruiting or enlistment service of the United States. We think it should not be said, as a matter of law, that the reasonable and natural effect of the language quoted from the publication was not to obstruct—that is, not to impede, retard, or render more difficult—the recruiting or enlistment service, and thus to injure the service of the United States. Printed matter may tend to obstruct the recruiting and enlistment service, even if it contains no mention of recruiting or enlistment, and no reference to the military service of the United States. It is sufficient if the words used and disseminated are adapted to produce the result condemned by the statute.

The service may be obstructed by attacking the justice of the cause for which the war is waged, and by undermining the spirit of loyalty which inspires men to enlist or to register for conscription in the service of their country. The greatest inspiration for entering into such service is patriotism, the love of country. To teach that patriotism is murder and the spirit of the devil, and that the war against Germany was wrong and its prosecution a crime, is to weaken patriotism and the purpose to enlist or to render military service in the war.

[2] The evidence that the plaintiff in error used, or caused to be used, the mails of the United States in the transmission of copies of the book, is in substance the following:

On March 29, 1918, 124 copies of the book were found concealed at his home. He and his wife had been engaged in distributing the books for 4½ months prior to that date, and in that period she had sold and distributed 100 copies, and her husband 25 copies. A number of the books were sent by mail. The wrappers of six of the books so sent by mail were introduced in evidence. An agent of the Department of Justice testified that the plaintiff in error admitted to him that he had written some of the addresses on the books and had directed his wife to write some of them. The books so transmitted in these wrappers were sent C. O. D., and on the wrappers the name of the plaintiff in error was marked as the sender. Several were refused by the persons to whom they were sent, and were returned by mail to the plaintiff in error.

The plaintiff in error, testifying on his own behalf, stated that he knew that his wife was mailing out the books, and that his name was on the return card on the books, because he was the treasurer of the association which owned the books, and that the money orders in payment for the books were handed to him as such treasurer. Mrs. Shaffer testified that she and her husband "were engaged together in this common enterprise"; that when books were sent C. O. D., and accepted, sometimes the return money would be received by her; but that, when the money came in her husband's name, he would get it. Neither she nor her husband testified that the latter had not mailed such books.

This evidence was clearly sufficient to go to the jury on the question whether or not the plaintiff in error used the mails in the distribution of the book. It shows that he and his wife were jointly engaged in the enterprise, and that he authorized her to write the addresses on

the wrappers by which the books were sent out by mail, and by which the books were returned to him by mail in case they were not accepted by the persons to whom they were sent. It tends to show that he used the mails, and that, even if he personally mailed none of the books, he aided, abetted, and induced the commission of the offense, and was therefore a principal under section 332 of the Criminal Code (Act March 4, 1909, c. 321, 35 Stat. 1152 [Comp. St. § 10506]). Burton v. United States, 142 Fed. 57, 61, 73 C. C. A. 243; Chambers v. United States, 237 Fed. 513, 524, 150 C. C. A. 395.

It is argued that the evidence fails to show that the plaintiff in error committed the act willfully and intentionally. But there is enough in the evidence to show the hostile attitude of his mind against the prosecution of the war by the United States, and that the books were intentionally concealed on his premises. He must be presumed to have intended the natural and probable consequences of what he knowingly did. The instructions of the court to the jury are not before us, and we must assume that the court properly submitted to the jury under der the evidence the question of the intent and purpose of the plaintiff in error.

The judgment is affirmed.