### Hewson-Herzog Supply Co. vs. Minnesota Brick Co.

Argued Nov. 24, 1893.   Affirmed Dec. 21, 1893.

No. 8479.

**The facts stated.**

The plaintiff was a jobber in buying and selling brick at St. Paul and Minneapolis, and bargained with defendant, a manufacturer of brick at Wheeler, Wis., for its entire output of brick, to be delivered on board cars at the place of manufacture for a certain price named, with specified freight charges to St. Paul and Minneapolis added, with a view on the part of plaintiff of reselling said brick to builders and contractors at a profit. The defendant was unable to fulfill the conditions of the contract, and the plaintiff brought suit to recover damages for the breach of the contract.   St. Paul and Minneapolis were the market places for the kind of brick mentioned in the contract.

**Measure of damages for breach of contract to sell and deliver goods.**

*Held*, that the measure of damages was not the difference between the contract price of the brick and the price which the plaintiff, as jobber, could sell them for to builders and contractors at the places named, but the difference between the contract price of the brick furnished in the quantities and at the periods mentioned in the contract, and the market value of the brick at those places, which it would have to pay, as jobber, for brick of a similar kind, and in the quantities which and at the periods when it was entitled to receive them under its contract.

**As of what time damages should be assessed.**

*Held*, also, that it could not recover damages for such breach of contract in one lump sum, but only such damages as accrued at the different times of defendant's default in not furnishing brick of the kind, and in the quantities, which it was also entitled to receive under the terms of the contract.

**The difference between the contract price and the market price, the measure of damages.**

It appearing in this case that the plaintiff, at all times during the existence of the contract, had the right and power to procure of another brick company the kind and quality of brick called for by the contract in question, at such times as it needed them, at St. Paul and Minneapolis, *held*, that the measure of damages was the difference between the contract price of the brick and the price which plaintiff, as a jobber, necessarily paid such other company for such brick at the places above named.

Appeal by plaintiff, Hewson-Herzog Supply Co., a corporation, from an order of the District Court of Ramsey County, *Chas. E. Otis,* J., made March 14, 1893, granting a new trial.

The defendant, the Minnesota Brick Company, a corporation, made a contract with plaintiff April 1, 1890, to manufacture during the season and deliver to plaintiff on board cars at Wheeler, Wis., 3,000,000 good merchantable pressed brick and as many more as it could make that season up to 6,000,000, for which plaintiff was to pay $13.50 per thousand. If freight from Wheeler to St. Paul should be more than $2.50 per thousand, the excess was to be deducted from the price. Defendant failed to make pressed brick of the character and quality required by the contract and this action was to recover damages for breach of the contract. At the trial January 12, 1893, the Judge directed the jury to return a verdict for plaintiff for $26,415 and it was done. Defendant excepted and moved for a new trial, and it was granted. From that order plaintiff appeals.

*Fletcher, Rockwood & Dawson,* for appellant.

*Young & Lightner,* for respondent.

BUCK, J.   This action was brought to recover damages on account of defendant's failure to manufacture and deliver brick to the plaintiff according to the conditions of a written contract made between the parties, and dated April 1, 1890. Upon the trial the court below directed the jury to find a verdict in favor of the plaintiff for the sum of $26,415. Subsequently, on defendant's motion, the court granted a new trial, upon the ground that the evidence as to damages was insufficient, and from this order the plaintiff appeals.

The contract provides that the defendant shall manufacture and sell to the plaintiff, during the season of 1890, all the pressed brick to be made by the defendant at its yards at Wheeler, Dunn county, Wis., and to burn, and have ready for shipment during the season commencing on or before June 9, 1890, good merchantable pressed brick, equal in all respects to the best stock brick of the St. Louis Hydraulic Press Brick Company of St. Louis, Mo., in weight, finish, and trueness, and of color equal to the samples, to the number of not less than 3,000,000, and as many more as defendant could

make, up to the number of 6,000,000, and to ship in accordance with instructions of the supply company, and furnish daily reports of bricks made, and shipped, and on hand.

The plaintiff was to sell and dispose of the brick in any market it deemed best, and to pay defendant $13.50 per thousand for such brick on board cars at defendant's yards at Wheeler, Wis., upon the basis of $2.50 per thousand for freight to St. Paul or Minneapolis, and, if the freight was greater than this amount, the difference should be deducted from the $13.50 per thousand for the brick. The payments were to be made monthly in cash on all brick sold and delivered during the current month, and plaintiff was to sell for immediate delivery the brick so manufactured as soon as they were made and ready for shipment, and to sell on or before January 1, 1891, not less than 3,000,000 pressed brick, and as many more as possible, up to the total amount of the output of defendant. The defendant made various attempts to manufacture the brick mentioned in the contract, but did not succeed, and it was unable to furnish the plaintiff with the amount of brick required by the terms of the contract, only a few thousand being furnished. By reason of this failure, the plaintiff alleged that it was damaged in the sum of $27,000. In its memorandum attached to the order granting a new trial, the court below states as the ground for so doing that the evidence as to damages was insufficient to support the verdict. This view of the case is fully warranted by the record, and we cannot see how the court could properly have done otherwise. There were several erroneous rulings of the court below in the admission and exclusion of evidence, which finally led up to the order directing the jury to find a verdict for plaintiff, whereby his rights were greatly prejudiced.

It appears that the defendant was a manufacturer of brick, and the plaintiff a jobber, middleman, or wholesale dealer, bargaining for the entire output of the defendant's yards, with the view of reselling the brick at a profit. To more fully understand the situation of the case, we state that it appears from the evidence that the officers or agents of the respective parties, at the time of the making of the contract, had their offices in the same room in a building in the city of St. Paul, and so continued until some time in the month of November, 1891, and that plaintiff had the ex-

clusive agency or contract with the St. Louis Hydraulic Press Brick Company for some time prior to the date of the contract between these parties, and during the entire period covered by the contract, and for a long time thereafter, under which it was enabled to purchase and did purchase, brick of the character in suit at the price of $16 per thousand at St. Louis, the freight thereon from St. Louis to St. Paul and Minneapolis up to September 1, 1890, being $5.51, making the cost price in those places $21.51, and from that date to January 1, 1891, $6.03, making the cost price at same places $22.03. The St. Louis Brick Company was a large manufacturer of this kind of brick, and was always able, ready, and willing to fill, and did fill, all such orders for this kind of brick for the plaintiff as it desired, and which brick plaintiff was at liberty to sell at St. Paul, Minneapolis, and in the cities of Stillwater, St. Cloud, and smaller places in the surrounding country, except that it was not permitted to sell the St. Louis brick at Duluth or Superior.

On the trial the plaintiff was permitted to show by two witnesses, against the objections of defendant, that the market value of the pressed brick of the character described in the contract was $28 per thousand at Minneapolis, but on cross-examination they testified that this price or market value was that which the jobber or agent charged to the builder, and not the price or value of such brick when sold by the manufacturer to a jobber or agent, and that as to such prices or values they had no knowledge. Upon this subject no other testimony was given by plaintiff, although its principal managing officers were examined as witnesses upon the trial. A witness for the defendant testified that there was a difference in the market price or value of brick sold by the manufacturer to the jobber or agent, and the price or market value of brick sold by the jobber or agent to the builder or contractor, which evidence was not disputed.

The court below held the measure of damages to be the difference between the contract price of the brick delivered in St. Paul or Minneapolis, viz. $16 per thousand, and the price which the jobber or middleman charged or sold the brick to the builder or contractor, viz. $28 per thousand, but limited the amount of the recovery to $9 per thousand, because the plaintiff only demanded that amount in its pleadings. In cases of this kind, no more dam-

ages can be recovered than such as were within the contempla-
tion of the parties when the contract was entered into, and which
would likely result from a breach thereof; for the familiar rule
may be applied here "that the intention of the parties is to be
ascertained from the whole contract, considered in connection
with the surrounding circumstances known to both parties." It
cannot be reasonably or legally claimed that these parties ever
contemplated that, if the defendant was unable to perform the
conditions of its contract, the measure of damages should be
the difference between the price of the brick to the plaintiff at
St. Paul or Minneapolis, viz. $16 per thousand, and the price
which the plaintiff, as jobber, charged or sold the brick for to the
builder or contractor. Such a rule or measure of damages would
compel the defendant to pay the plaintiff all the expense of carry-
ing on its business, including the value of time spent, costs of
handling, and other incidental expenses attending the sale of
3,000,000 brick at retail, for a period of nine months at least, the
time covered by the contract. The result would also be that the
plaintiff would receive a greater sum as damages by reason of the
defendant's default than it could obtain as profits if the defend-
ant had performed all the conditions of its contract with plain-
tiff. This is not the compensation as damages which the law
permits by reason of the breach of a contract. The rule stated
as law in 1 Sutherland, Dam. 17, is this: "This universal and
cardinal principle is that the person injured shall receive a com-
pensation commensurate with his loss or injury, and no more;
and it is a right of the person who is bound to pay this compensa-
tion not to be compelled to pay more, except costs."

Plaintiff was not entitled to recover, as damages, any greater
sum than the difference between the contract price of the brick
at St. Paul and Minneapolis, viz. $16 per thousand, in the quan-
tities and at the periods mentioned in the contract, and the mar-
ket value at those places which it would have to pay as jobbers or
middlemen for brick of a similar kind, and in the quantities which
it was entitled to receive under its contract, *Grand Tower Co.* v.
*Phillips*, 23 Wall. 471; and this rule of damages must be qualified
as to this case by another one, to be stated hereafter.

The plaintiff was not entitled to recover the damages, in one

lump sum, which resulted from the defendant's breach of contract, for all of these brick were not to be delivered at one time, nor in one gross or total quantity, but in different quantities and at different periods. The rule seems to be pretty well settled that where, under a contract of sale, goods are to be delivered at certain specified periods and in specified quantities, and as such period arrives, if no delivery or only a partial delivery takes place, the damages are to be estimated as of those periods when such contract ought to have been performed. Wood's Mayne, Dam. § 206. And the rule is there further stated that "if the defendant absolutely repudiates his contract at any period previous to the final date specified, and the plaintiff elects to treat the contract at an end, yet in considering the question of damages they will still be estimated with reference to the times at which the contract ought to have been performed." If this were not the rule, there might be great injury and injustice done to a party where the periods of performance extended through a great many years, and the market prices or values might vary during the different periods of performance of the contract.

We are also of the opinion that the court below erred in striking out the evidence in regard to the conditions existing between the plaintiff and the St. Louis Brick Company. That there was a breach of the contract between these parties on the part of the defendant was well established, and the question to be determined is as to the extent of the defendant's liability upon such default. There was neither fraud, nor intent on its part to produce such default, but, on the contrary, it seemed to make great effort to fulfill its duty and obligations to the plaintiff in this respect. In such case it was the duty of the plaintiff to render the injury or damages as light as possible. It could not, by its negligence or by its want of reasonable exertion, unnecessarily enhance the amount of damages to which the defendant would be liable by reason of its breach of the contract.

When a party is injured by nonperformance of a contract, especially of the kind existing between these parties, the other party, if he has it in his power, is bound to lessen the damages if he can do so by reasonable exertions, and, if he is necessarily compelled to perform more labor or put to greater expense, these are matters

which are properly chargeable against the party in default; and, if a party who is entitled to the benefits of a contract receives notice from the other party that he cannot perform its conditions, then it is the duty of such party to save the party in default, as far as it is in his power to do so, all further damages, though the performance of this duty may call for affirmative action. 1 Sutherland, Dam. 149–151.

And, where all the facts and surrounding circumstances are sufficient to fully satisfy the party not in default that the other party cannot and will not perform the conditions of the contract between them, he should also use reasonable exertions to save the party in default from further damages. It appears in this case that the plaintiff, at all times during the existence of this contract, had it in its power to procure brick of the St. Louis Brick Company, of the kind and quantity called for by this contract, at St. Paul or Minneapolis, with freight charges added, making the additional expense about $6 per thousand. The quantities and kind of brick required or needed could always be obtained by the plaintiff without delay or trouble. It had an extensive territory in which to sell its St. Louis brick, and it does not appear that any of its customers ever complained of the price, or that they were not supplied in the quantity, and of the kind, and at the times needed by them.

The only difference to the plaintiff was the cost price of the brick at St. Paul and Minneapolis. The measure of damages, then, which plaintiff was entitled to recover, if upon the whole case it proved its cause of action, was the difference between the cost price of the defendant's brick, as shown by the contract, and the St. Louis brick delivered in St. Paul and Minneapolis, and which plaintiff had to pay for as jobber. This rule is, of course, applied to this case upon the evidence found in the record, and should not be rendered inapplicable by reason of the fact that the plaintiff was authorized to sell the defendant's brick in the cities of Duluth and Superior, some 150 miles distant from St. Paul and Minneapolis, but was prohibited from selling the St. Louis brick in those places. But the above measure of damages should be modified or qualified as to the amount of brick needed or required to supply the demands of its customers at Duluth and Superior, and upon another trial

it should be permitted to show, if it can do so, the amount of damage it sustained by reason of the defendant's default in not furnishing it with the quantity of brick needed to supply such customers at those places during the existence of the contract.

The plaintiff had no right, however, to demand of the defendant that the brick so to be manufactured should be delivered to it at Duluth or Superior, but only on the cars at Wheeler, Wis. It appears that St. Paul and Minneapolis were the market places, nearest to Wheeler, for such kind of brick. It may be difficult to establish a just measure of damages as between these parties in this case, in view of the complicated conditions existing as to the Duluth and Superior territory; but we think that the measure of damages, as applied to that territory, should be the difference between the contract price of the brick at Wheeler, Wis., viz. $13.50 per thousand, with the cost of freight to those places or territory added, and the price which plaintiff could as a jobber or middleman procure brick for, at the lowest market value, or for a less price if reasonably possible, of a similar kind, and in sufficient quantities, and at the times mentioned in the contract, to the amount or quantity which it could sell or needed at those places. We construe the contract in question as one of sale, and not one of agency.

The order granting a new trial is affirmed.

(Opinion published 57 N. W. Rep. 129.)