SALMON et al. v. HELENA BOX CO.

(Circuit Court of Appeals, Eighth Circuit. July 16, 1906.)

(No. 2,309.)

1. TRIAL—INSTRUCTIONS—REFUSAL.

Where, in an action for breach of a contract of sale, the court charged that if the defendants were not guilty of a breach of the contract and acted in good faith, were ready to take the lumber contracted for, and the only reason they did not take it was because plaintiff was unable to fill their orders, then plaintiff could not recover, but that if defendants, and not plaintiff, were guilty of a breach of the contract, plaintiff was entitled to recover, it was not error to refuse to charge that plaintiff could not recover unless it had previously complied with the conditions imposed on it by the contract, it being substantially covered by the charge given.

[Ed. Note.—For cases in point, see vol. 46, Cent. Dig. Trial, § 652.]

2. SALES—PLACE OF DELIVERY.

In the absence of any contrary provision in a contract of sale, the place of delivery is the place where the goods are located when sold.

[Ed. Note.—For cases in point, see vol. 43, Cent. Dig. Sales, § 215.]

3. SAME—CONTRACT—CONSTRUCTION.

A contract provided for the purchase of 4,000,000 feet of different grades of dimension lumber at an agreed price on a certain freight rate, and 1,000,000 more feet to be delivered on another freight rate, "to be shipped at the rate of from 40 to 50 cars per month," in accordance with shipping directions to be given by the buyers from time to time. *Held,* that such contract bound the buyers to give shipping instructions within a reasonable time, and required the seller, within a like reasonable time, to make shipments according to the instructions.

[Ed. Note.—For cases in point, see vol. 43, Cent. Dig. Sales, §§ 222, 223.]

**4. SAME—UNCERTAINTY.**

The clause of the contract requiring shipments to be made according to shipping instructions to be given from time to time by the buyers did not render the contract void for uncertainty or unenforceable except at the option of the buyers.

[Ed. Note.—For cases in point, see vol. 43, Cent. Dig. Sales, § 54.]

**5. SAME.**

A contract by correspondence for the sale of lumber provided for shipment in accordance with the buyers' directions, and contained a clause that the buyers understood that the seller would be able to ship from 40 to 50 cars per month in accordance with shipping directions. *Held*, that such clause should be treated as a limitation imposed in favor of the seller to safeguard it against excessive orders at any one time, and did not impose on the buyers the obligation to order that much lumber monthly.

[Ed. Note.—For cases in point, see vol. 43, Cent. Dig. Sales, §§ 222, 223.]

**6. SAME—MEASURE OF DAMAGES.**

If, in an action by the seller for breach of a contract for the sale of lumber, it appears that the lumber purchased had a market value at the mill from which it was to be shipped, the measure of plaintiff's damages is the difference between the contract price and market value at the time or times when delivery was required by the contract.

[Ed. Note.—For cases in point, see vol. 43, Cent. Dig. Sales, §§ 222, 223.]

**7. SAME—MEASURE OF DAMAGES.**

If, in a like action, it appears that the lumber purchased had no market value at the time and place of delivery, the measure of plaintiff's damages is the difference between the contract price and the market value at the nearest available market where the lumber could have been sold, less freight and other expenses attending the transportation to that market.

[Ed. Note.—For cases in point, see vol. 43, Cent. Dig. Sales, § 1099.]

In Error to the Circuit of the United States for the Eastern District of Arkansas.

Morris M. Cohn, for plaintiffs in error.

John I. Moore, U. M. Rose, W. E. Hemingway, G. B. Rose, D. H. Cantrell, and J. F. Loughborough, for defendant in error.

Before SANBORN, HOOK, and ADAMS, Circuit Judges.

ADAMS, Circuit Judge. This was an action at law instituted by the Helena Box Company, defendant in error, against Hamilton H. Salmon and R. Brandt, composing the firm of Hamilton H. Salmon & Company, plaintiffs in error, to recover damages for a breach of an executory contract for the sale of lumber, and in addition thereto, to recover a balance due for lumber actually sold and delivered. The terms of the contract are not disputed. They are found in a letter written and signed by defendant of date, January 14, 1904, addressed to the box company, as follows:

"You may enter our order for the following cottonwood lumber: [Here follows a description of 4,000,000 feet of different grades and sizes of common commercial lumber, and the agreed price for each kind.] All of the above on the Helena, Ark., rate of freight. [Here follows a description of one million feet more of such lumber, and its price.] To be delivered on Cincinnati, Ohio, freight rate. * * * We can start shipping on the above at once, and understand that you will be in a position to ship us from 40 to

50 cars per month. in accordance with shipping directions. Shipments to be made in accordance with instructions, as given by us from time to time.

"[Signed]                                        Hamilton H. Salmon & Co.

"Accepted:        Helena Box Company, by H. W. Mosby, Secretary."

The main issue of fact on the claim for damages for breach of the contract was whether the plaintiff or defendants first breached it.    Plaintiff claims that defendants, after giving shipping instructions for a certain quantity of lumber, ceased giving any further instructions and refused to take the lumber according to the requirements of the contract; that plaintiff was at all times ready to fill orders made according to the contract, and that after waiting a reasonable time for shipping directions, it sold the lumber for what it could get and sustained the loss sued for.    Defendants claim that plaintiff first breached the contract by failing to fill orders according to instructions and by filling them, when done at all, with inferior quality of lumber; and for these reasons that they were justified in rescinding the contract.    The case was tried to a jury and a large amount of proof taken on the issue just stated.

The learned trial judge after carefully stating the contentions of the parties so that there could be no misunderstanding about the issue joined in the case, concluded that part of the charge relating to liability as follows:

"Now if you find from all the evidence in this case that the defendants were not guilty of a breach of the contract, that they acted in good faith and were ready to take the lumber and the only reason they did not take it was because the plaintiff was unable to fill their orders, then your duty would be to find the issues * * * in favor of the defendants and that would be the end of it."

Then the converse of the proposition was stated and the jury was told that if defendants, and not the plaintiff, were guilty of a breach of the contract, the plaintiff was entitled to recover.    Considering the care with which the court defined the issues between the parties and the clear statement of the ultimate fact on which liability depended we think the jury was fully instructed and that there was no reversible error in not giving the instruction requested by defendants' counsel to the effect that plaintiff could not recover unless it had previously complied with the conditions imposed upon it by the contract.    That proposition was substantially covered by the main charge, and it was not error to refuse to repeat it in the language chosen by defendants' counsel.

The next question for our consideration relates to the proper construction of the contract of July 14, 1904.    On this the trial judge charged the jury substantially that the contract was valid and imposed the duty upon defendants to order lumber shipped within a reasonable time, and as to what was a reasonable time he charged as follows:

"What a 'reasonable time' is, depends upon the circumstances in each particular case.    Now, in view of the fact that this contract provides that the plaintiff was to be ready to ship between 40 and 50 cars a month, what do you, as reasonable men, think would be reasonable * * * to require defendants to order shipped out during that time? * * * But on the other

hand the law does not expect, in view of the fact that the contract provides, that they shall await shipping instructions, that the defendants must * * * have ordered every month between 40 and 50 cars."

Plaintiff was the owner and operator of two saw mills, and by contract entitled to the product of other mills situated at or near Helena, Ark., and had either in stock or quickly available, cotton-wood lumber of the dimensions in length, width, and thickness usually found in lumber yards. Defendants were large dealers, requiring such lumber to meet existing and future orders of their customers located in different parts of the country. In these circumstances the contract in question was made. It contains an express agreement for the purchase and sale of specified quantities of different dimensions of lumber, an agreement fixing the price of each kind specified, an agreement that shipments should be made according to shipping instructions to be given from time to time by defendants.

In the absence of any contrary provision found in the contract for delivery, the general rule fixing the place of delivery at the place where the goods are located when sold, must prevail. Benjamin on Sales, § 682; Hatch v. Oil Co., 100 U. S. 124, 131, 25 L. Ed. 554. The trial court properly held that the parties made a valid and enforceable contract obligating defendants to give shipping instructions to plaintiff within a reasonable time and requiring plaintiff, within like reasonable time, to make shipments according to the instructions. No option was left to either party. The buyers could no more neglect to give shipping instructions without violating their obligation than the seller could neglect to make shipments after receiving the instructions without violating its obligation. The contention of defendants' counsel that the clause requiring shipments to be made according to shipping instructions to be given from time to time by the buyers renders the contract void for uncertainty or enforceable only at the option of the buyers is not sound. Hinckley v. Pittsburgh Bessemer Steel Co., 121 U. S. 264, 7 Sup. Ct. 875, 30 L. Ed. 967; Cold Blast Transp. Co. v. Kansas City Bolt & Nut Co., 52 C. C. A. 25, 114 Fed. 77, 57 L. R. A. 696; George Delker Co. v. Hess Spring & Axle Co. (C. C. A.) 138 Fed. 647; Boyington v. Sweeney, 77 Wis. 55, 45 N. W. 938; Excelsior Wrapper Co. v. Messinger, 116 Wis. 549, 93 N. W. 459; Ault v. Dustin, 100 Tenn. 366, 45 S. W. 981. It is contended that the following clause of the contract, "We understand that you will be in a position to ship us from 40 to 50 cars per month in accordance with shipping directions" imposed upon defendants the obligation to order that much, at least, monthly. This clause was treated by the trial court as a limitation interposed in favor of the box company to safeguard it against excessive orders at any one time; and this, we think, in the light of all the other terms of the contract, was its intended function. This clause was also properly treated as one of the terms of the contract which the jury might consider in determining what, within the contemplation of the parties, would be reasonable expedition in the matter of giving shipping instructions.

Was the true rule governing the measure of damages given to the jury? Plaintiff's secretary testified as a witness for his company concerning the efforts made to sell lumber during 1904 and the prices received for what was sold. Another witness connected with a different lumber company testified at the instance of plaintiff, about making two trips, in July and August, 1904, through the states of Ohio, Illinois, Michigan, Iowa, Kansas, and Nebraska, a route which he says presented the most desirable market for sale of cottonwood lumber. Both of these witnesses referred to "a market price," and one of them to the market price at Helena. Moreover, the evidence discloses that St. Louis, Louisville, Cincinnati, Chicago, Kansas City, and Omaha each afforded a market for lumber such as contemplated by the contract.

Notwithstanding evidence of this character, the court charged the jury concerning the measure of damages as follows:

"All that the law requires the seller to do when there is a breach of the contract is to exercise reasonable diligence such as any business man similarly situated would exercise to get the best price that he can and if he obtained that price, if he does that, and there is still a loss then the loss must fall on the party who breached the contract. So in this case it is for you to determine, if you find this issue in favor of plaintiff, (that the defendants breached the contract) how much less did the plaintiff have to take for the lumber in order to sell it, having exercised due diligence to obtain the best price, than it would have received under the contract price."

An exception was taken to this portion of the charge by identifying it in a way satisfactory to and approved by the trial court. Expressing the same thought the court in another part of the charge told the jury as follows:

"The only measure of damages which is to govern you is this: What price could the plaintiff, after there was a breach of the contract on the part of the defendants, obtain by the exercise of reasonable diligence for the lumber which the defendants under their contract ought to have taken and did not take," etc.

From these excerpts it is obvious that the court below took no heed of the evidence tending to show that there was a market value for the lumber at Helena or at any other place. It announced a general rule which in the absence of one more specific and applicatory might be the only available rule. 1 Sedgwick on Damages, § 170 et seq.; Benjamin on Sales, §§ 758, 869, and cases cited. But we think the present case is subject to more specific treatment, and is governed by well-established rules applicable to different phases disclosed by the proof. It certainly does not clearly appear from the proof that there was no market value for cottonwood lumber at Helena in the summer of 1904. If there was such a market value plaintiff's measure of damages would have been the difference between the contract price and the actual market value of the lumber at that place at the time or times when delivery was required by the contract; and in that event, the rule adopted by the trial court would have been erroneous. If Helena afforded no market for the lumber in question and if there was any available market therefor, plaintiff's measure of damages, as will be presently seen, would have been the

difference between the contract price and the market value at the nearest available market where it could have been sold, with deduction of freight and other expenses attending the transportation of the lumber to that market. None of these hypothetical conditions were submitted to the jury for its determination, but the conclusion of the court below seems to have been predicated upon the hypothesis that there was neither a market value at Helena nor anywhere else for the lumber in question. This, for reasons already stated, we think, the record does not warrant.

The Supreme Court of the United States in Grand Tower Co. v. Phillips, 23 Wall. 471, 23 L. Ed. 71, had occasion to consider this subject. That was a case where the Grand Tower Company entered into a written contract with Phillips and others to deliver to them at Grand Tower, Ill., 150,000 tons of coal per year in equal daily proportions between February 15th and December 15th of each year. The company breached the contract by failing to deliver coal as required. Mr. Justice Bradley, in delivering the opinion of the court, after alluding to the familiar rule which regards the price at the place of delivery as the normal standard by which to estimate the damage for nondelivery, and to the obvious unfairness of confining plaintiffs to the prices at Grand Tower, where there was no general market and where the prices were under the control of defendant company, lays down the following rule:

"The true rule would seem to be, to allow the plaintiffs to show the price they would have had to pay for coal in the quantities which they were entitled to receive it under the contract, at the nearest available market where it could have been obtained. The difference between such price and the price stipulated for by their contract, with the addition of the increased expense of transportation and hauling [if any], would be the true measure of damages."

In Yellow Poplar Lumber Co. v. Chapman, 20 C. C. A. 503, 74 Fed. 444, which was a case where damages were sought by the seller against the buyer for failure to receive timber sold under a contract for its sale and delivery at certain times, the court says:

"We have no hesitancy, on the pleadings as they now stand, in announcing the true measure of damages in this case,—if damages there were,—as the difference between the contract price of the timber and its market value at the places where it was to have been delivered; and if the defendant below had entire control of the market at those places, as is claimed by defendant in error, then the measure of damages was the difference between the contract price of the timber at such points and the price of like timber in the nearest available market, less the additional cost of delivering such timber from said points to such nearest market"—citing McNaughter v. Cassally, 4 McLean, 530, Fed. Cas. No. 8,911; Pope v. Filley (C. C.) 9 Fed. 65, and Tower Co. v. Phillips, 23 Wall. 471, 23 L. Ed. 71. To the same effect are Lawrence v. Porter, 11 C. C. A. 27, 63 Fed. 62, 26 L. R. A. 167; 1 Sedgwick on Damages, § 246, and cases cited; Benjamin on Sales, pp. 883, 894.

As the record now appears we think the learned trial judge entertained an erroneous view concerning the measure of damages applicable to the facts of this case and erred in charging the jury as stated on that subject. Some exceptions were taken to the action of the Circuit Court concerning several small items of account in-

volved in the claim for balance due for lumber actually received by defendants, but after careful consideration, we find no reason for disapproval. Substantial justice was reached in those particulars. The reference by the trial judge in his charge to the rules of the National Hardwood Association as affecting widths of lumber, to which exception was taken, appears to have been inadvertent, and to have been properly explained when attention was called to it in the exception taken. Whether widths were fixed by the rules of the association or by the contract seems unimportant. The judge, at worst, only referred to the wrong document as making provision for certain unquestionable widths, about which he was instructing the jury. The mistake, if any, was harmless.

It results that because of the adoption of an erroneous standard for computing the damages, the judgment must be reversed, and a new trial ordered.

SANBORN, Circuit Judge (concurring). In this case each of the parties claims that the other first broke the contract, and the testimony upon this subject was voluminous and conflicting. If the plaintiff committed the first breach of the contract, and if that breach had not been waived by the defendants, this fact was a perfect defense to the action. There were two indispensable conditions to its maintenance: (1) That the plaintiff had not committed the first breach which had not been waived by the defendants; and (2) that the defendants had themselves violated the contract. Counsel for the defendants requested the court to instruct the jury that the plaintiff could not recover unless it had previously complied with the conditions imposed upon it, and no question of waiver was presented in the case. The court refused to grant this instruction, and submitted the case to the jury upon the single question whether or not the defendants had broken the agreement. Because the question whether or not the plaintiff had first breached the contract was not fairly presented to the jury for their determination, I am in favor of reversing the judgment.

But I am unable to concur in the reason stated by the majority for the reversal because the court below in my opinion correctly stated the general rule for the measure of damages applicable to this case, because no request was made for the submission of any subordinate or more specific rule and because no exception was taken sufficient to challenge the rule submitted. The charge of the court on this subject was that the measure of damages was the difference between the contract price of the rejected lumber and the price which the vendor could have obtained for it by the exercise of reasonable diligence. This is the fundamental rule for the measure of damages in such a case because compensation is the basis of all such rules, and this is the only rule which in all cases of this nature will make the vendor whole. This rule is not in conflict, but is the basis of the rule that if there is a market and an established market value for the rejected quantity and quality of lumber at the place of delivery, the difference

between that value and the contract price is the true measure of the damages, for in such a case the vendor by the exercise of reasonable diligence can obtain that value. Barrow v. Arnaud, 8 Q. B. 604, 609. It is not inconsistent with, but is the foundation of, the rule that if there is no market value at the time and place of delivery, or if he cannot sell the rejected quantity and quality of property at that place at the market value, the difference between the contract price and the price at which he can sell it in the nearest available market with a proper allowance for cost of transportation and incidental expenses is the true measure of his damages, because under such circumstances, he may in this way most conveniently make himself whole. Grand Tower Co. v. Phillips, 23 Wall. 471, 480, 23 L. Ed. 71; Yellow Poplar Lumber Co. v. Chapman, 20 C. C. A. 503, 515, 74 Fed. 444, 456; Lawrence v. Porter, 11 C. C. A. 27, 29, 63 Fed. 62, 64, 26 L. R. A. 167; Hewson-Herzog Supply Co. v. Minnesota Brick Co., 55 Minn. 535, 536, 57 N. W. 129. These are subordinate and auxiliary rules which spring from the fundamental general rule given by the court. They apply only when they are in accord with and aid in the enforcement of the general rule. When their application would result in a recovery of more or less than the difference between the contract price and the amount for which the vendor might sell the property by the exercise of reasonable diligence, they have no function. They apply to specific classes of cases, while the general rule is constant and governs all cases of the nature of that in hand. There was, therefore, no error in submitting to the jury for their guidance this general rule by which the damage in this case and in all others of its nature must be measured. If the subordinate and auxiliary rules recited in the opinion of the majority were also applicable to the "hypothetical conditions" they mention, the failure of the court to embody them in its charge was not error because no request for this submission was preferred. Where a court correctly states to the jury the general rule of law in its charge, its failure to present to them auxiliary and more specific rules upon the same subject is not error in the absence of any request for, or suggestion of, such action. Frizzell v. Omaha St. Ry. Co., 59 C. C. A. 382, 386, 124 Fed. 176, 180, and cases there cited; Chicago G. W. Ry. Co. v. Healy, 30 C. C. A. 11, 16, 86 Fed. 245, 250; Texas & Pac. R. Co. v. Cody, 14 C. C. A. 310, 311, 312, 67 Fed. 71, 73; Eastern Oregon Land Co. v. Cole, 35 C. C. A. 100, 104, 92 Fed. 949, 953.

There was no such request or suggestion in this case. The only exception to the charge on the measure of damages was in these words:

"I also wish to save exceptions as to the matter of damages, in which your honor, commenting upon the evidence of Mr. Sumner, stated in substance that a person was complying with the law if he got the best price he could, or words to that effect."

The contention of the exceptor here that a vendor who secures the best price he can obtain for contract property which his vendee has refused to receive violates or fails to comply with the law is clearly untenable, and this is the only proposition to which the exception

points. It contained no request, suggestion or intimation that he desired the court below to instruct the jury to apply the specific rules mentioned in the majority opinion to the hypothetical conditions there described. Moreover the comments of the court upon the evidence of Mr. Sumner were correct and are sustained by the authorities. The plaintiff was a manufacturer of lumber in the state of Arkansas. The defendants were jobbers or middlemen in New York City who bought lumber in large quantities of manufacturers and sold it throughout the United States to contractors, builders, and consumers. Plaintiff's witnesses, millmen residing in Arkansas, had testified that they tried at Helena and in all the large cities, where they would be most likely to make sales, all over the central portion of the United States, to sell this lumber and that they could not obtain more than $2 per thousand less than the contract price for it. Mr. Sumner and another witness testified for the defendants that they could get and that for two sales of portions of the contract amount of two grades of lumber they did obtain orders, one at Tiffin, Ohio, and another at Battle Creek, Mich., at prices $2 per thousand in excess of the contract price and that the reason why the plaintiff and Mr. Uptograff were unable to sell at such prices was that consumers would pay the jobber's prices to only about five large concerns, and that they would not buy of others unless the latter sold the lumber at a sacrifice. In this state of the evidence the court instructed the jury that the manufacturer, the plaintiff, was entitled to recover the difference between the amount which it could realize from the lumber by the exercise of reasonable diligence and the contract price, and that it was not its fault if it was unable to obtain the price which the defendants, the jobbers, might have secured. The entire charge of the court on this question of damages was in these words:

"If you find for the plaintiff, the next thing to be considered by you is as to the damages the plaintiff is entitled to recover. As I said to you before, no speculative damages can be allowed on a contract of this kind. The only measure of damages which is to govern you is this: What price would the plaintiff, after there was a breach of the contract on the part of the defendants, obtain by the exercise of reasonable diligence for the lumber which the defendants under their contract ought to have taken and did not take. If it could, by the exercise of reasonable diligence, have obtained the full price that the defendants agreed to pay plaintiff, then, there is no damage, and the plaintiff is not entitled to recover any damages whatever. But on the other hand, if you find from the evidence that by reason of the stringency of the market, and that by reason of the fact that lumber had gone down the plaintiff was unable to find a purchaser for this lumber except at a lower figure than that agreed upon in the contract, then plaintiff is entitled to recover the difference between the price under the contract and the price it actually received. Of course, they cannot just go to work and sacrifice the lumber, but they must exercise reasonable diligence to get the best price they possibly could.

"Now, on the part of the plaintiff they have testified that they made every effort possible to sell the lumber; that Mr. Mosby made two or three trips; and also evidence was introduced to show that it was hard to sell lumber last year, and it seems to be now with cottonwood lumber; that there was no big demand for it, and that in order to sell it at all it had to be sold at a lower price than when the market was good and there was a good demand.

"In this connection, I want to say to you, gentlemen of the jury, that it has

been testified to by Mr. Sumner, that these people were not as well known as other firms, and for that reason could not get as good a price. That may be true. But if they could not get as good a price, it was not plaintiff's fault. They were willing to deliver, they say, according to the contract, and, if Mr. Sumner could get a better figure, it was his duty to do so. All that the law requires the seller to do, when there is a breach of the contract, is to exercise reasonable diligence, such as any business man similarly situated would exercise, to get the best price he can, and if he obtained that, if he does that, and there is still a loss, then the loss must fall upon the party who breached the contract. So in this case, it is for you to determine, if you find this issue in favor of the plaintiff (that is, that the defendants breached this contract), how much less did the plaintiff have to take for the lumber in order to sell it, having exercised due diligence to obtain the best price, than it would have received under the contract price."

The comments upon the evidence of Mr. Sumner were not error because the price which the defendants or other jobbers could, or did obtain for lumber of this character in the larger cities of the country, with proper allowances for freight and expenses, was not the true criterion by which to measure the plaintiff's damages, although that price might have been the market value of the lumber, because the plaintiff, a manufacturer in Arkansas, could not obtain that price and therefore the difference between that price and the contract price would not make it whole. The criterion for the measurement of the plaintiff's damages is the price which it, the manufacturer, not that which the defendants, the jobbers, could obtain for the property by the exercise of reasonable diligence.

In Hewson & Herzog Supply Co. v. Minnesota Brick Co., 55 Minn. 530, 536, 57 N. W. 129, the plaintiff, a jobber, purchased of a manufacturer of brick at Wheeler, Wis., its entire output to be delivered at Wheeler at a price which, with the charges for freight to St. Paul and Minneapolis added, made the contract cost in those cities $16 per thousand. The defendant failed to deliver. St. Paul and Minneapolis constituted the nearest market to Wheeler, and the plaintiff could have purchased the contract quantity and quality of brick there for $28 per thousand, which was the established market value of brick in those cities. This market value, however, was the price at which jobbers of brick sold them to contractors and builders. The plaintiff could have purchased the brick of a manufacturer in St. Louis and could have transported them to St. Paul and Minneapolis and have paid the freight upon them and they would then have cost it but $22 per thousand. The court held that the measure of damages was not the difference between the market value or the market price of brick in St. Paul and Minneapolis and the contract price, with proper allowance for freight, but that it was the difference between the amount for which the plaintiff could have procured the brick at St. Paul and Minneapolis by purchasing them at St. Louis of the manufacturer and transporting them to those cities, and the contract price. In other words, the Supreme Court of Minnesota held that the measure was the difference between the contract price and the price at which the plaintiff could have procured the brick by the use of reasonable diligence.

147 F.—27

In Lawrence v. Porter, 11 C. C. A. 27, 29, 63 Fed. 62, 64, 26 L. R. A. 167, the vendor had agreed to deliver lumber on a credit of 90 days. He refused to perform his contract, but offered to deliver the identical lumber for cash at a price 50 cents per thousand feet less than the contract price. The vendees could not obtain lumber of like quantity and quality of others without paying the market value, which was in excess of the contract price, and they sued for the difference. The court refused to permit them to recover the difference between the market value and the contract price and held that their damages were "measured by the difference between what they had agreed to pay and the sum for which they could have supplied themselves with lumber of the same character at the place of delivery, or if not obtainable there, then at the nearest available market, plus any additional freight resulting from the breach."

In Grand Tower Co. v. Phillips, 23 Wall. 471, 479, 23 L. Ed. 71, the tower company, a mining corporation, agreed to sell and deliver to Phillips and St. John at their coal dump, in Illinois, about 60 miles above Cairo, 150,000 tons of coal, and it failed to do so. The vendees sued for damages. There was no market for the purchase of such a quantity of coal at the place of delivery. The plaintiff proved the market value of such coal at Cairo and at points below it on the Mississippi river and the court instructed the jury that the true measure of damages was the cash value of the kind of coal mentioned at these points after deducting the contract price of the coal and the costs and expenses of transporting it thither. The Supreme Court reversed this ruling and said:

"The true rule would seem to be, to allow the plaintiffs to show the price they would have had to pay for coal in the quantities which they were entitled to receive it under the contract at the nearest available market where it could have been obtained. The difference between such price and the price stipulated for by their contract, with the addition of the increased expense of transportation and hauling [if any] would be the true measure of damages."

By the same mark the plaintiff in the case at bar was entitled to show the price at which it was able to sell the contracted lumber, which was rejected, at the nearest available market where it could sell that quantity and quality of lumber, and the difference between that price and the contract price, with the addition of any increased expense of transportation and of traffic, if any, was the true measure of damages. And this was the charge of the court. The rejected lumber was of a special quality. The quantity rejected was large. There is very persuasive evidence that there were few, if any, places where this quantity and quality could be sold, and that the manufacturer was unable to realize as much for it as the jobbers. The evidence of market value at the place of delivery is uncertain and confusing. In this state of the case the authorities cited above seem to be peculiarly pertinent, and in the light of the principles and rules to which reference has been made it seems to me that the judgment below should not be reversed on account of the charge of the court on the measure of damages.