## TIBBITTS–HEWITT GROCERY CO. v. S. E. LUX, JR., MERCANTILE CO.*

(Circuit Court of Appeals, Eighth Circuit. April 30, 1925.)

No. 6728.

1. Sales ⬚383—Trial ⬚252(20)—Evidence held to show market for rejected sugar at place and time of rejection; instruction permitting consideration of market value at another place than place of delivery held error in view of evidence.

In action for breach of contract to purchase sugar, evidence held sufficient to show a market for sugar at place of delivery at time of rejection, and render erroneous instruction permitting jury to consider on question of damages price obtained for sugar when sold at another place and freight charges to that place.

2. Witnesses ⬚255(3)—Use of memorandum to refresh witness' recollection unwarranted, unless memorandum made by witness contemporaneously with transaction.

Use of memorandum to refresh recollection of witness, who then testifies to facts as matters of present knowledge, is unwarranted, unless memorandum was made by witness and contemporaneously with transaction involved.

3. Trial ⬚253(10)—Instruction as to purchaser's duty to accept sugar, if of quality indicated by words having accepted trade meaning, held erroneous.

Where sale and purchase of "Hong Kong refined granulated sugar" was made "subject contract with original seller," which contract referred to sugar as "white Hong Kong refined granulated sugar," instruction that, if words "Hong Kong refined granulated sugar" had acquired a definite trade meaning, indicating particular character and quality, and sugar was of that quality, it was duty of purchaser to accept it, held erroneous for failure to include descriptive word "white" as contained in contract with original seller.

4. Evidence ⬚457—Oral representations as to quality of sugar sold held to have no place in case, in view of written contract to purchase "white Hong Kong refined gradulated sugar."

In action for breach of contract to purchase "white Hong Kong refined granulated

*Rehearing denied July 31, 1925.

sugar," which language evidence indicated had a definite trade meaning, held oral representations as to quality of sugar, claimed to have been made by brokers negotiating sale and pleaded as defense, had no place in case.

In Error to the District Court of the United States for the Eastern District of Missouri; Charles B. Faris, Judge.

Action by the S. E. Lux, Jr., Mercantile Company against the Tibbitts-Hewitt Grocery Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

David Goldsmith and M. N. Sale, both of St. Louis, Mo., for plaintiff in error.

D. R. Hite, of Topeka, Kan., for defendant in error.

Before SANBORN and LEWIS, Circuit Judges, and POLLOCK, District Judge.

LEWIS, Circuit Judge. The defendant in error, herein called the Lux Co., a corporation of Kansas, recovered a judgment as for its damages on account of alleged breach of contract by appellant, herein called Tibbitts Co., a Missouri corporation. The complaint alleges that on or about May 3, 1920, the Lux Co. sold to the Tibbitts Co. 1,000 bags of Hong Kong granulated sugar weighing 100 pounds each at $24.75 per cwt. f. o. b. San Francisco, that the Tibbitts Co. agreed to pay for said sugar on receipt of bill of lading, that on or about July 20, 1920, the sugar was shipped to St. Louis from San Francisco, that thereafter bill of lading showing shipment on board railroad cars consigned to St. Louis was presented to the Tibbitts Co. and it refused to pay for said sugar and to accept the same. The answer alleges that about May 3, 1920, the Meinrath Brokerage Co., brokers in merchandise, having an office at Chicago, called up the Tibbitts Co. at its office in St. Louis over the telephone and stated that the Meinrath Co. had for sale 1,000 bags of Hong Kong white granulated sugar and offered it to Tibbitts Co., that the Meinrath Co., acting as the agent of Lux Co., represented that the sugar so offered for sale was dry, fine, white granulated sugar of a quality as good as standard American white granulated sugar, that Tibbitts Co. thereupon orally agreed in said conversation to purchase 1,000 bags of said Hong Kong white granulated sugar provided it was of the quality stated, viz.: as good as standard American white granulated sugar, that thereafter Meinrath Co. sent to Tibbitts Co. a document called a "sales memorandum," which did not describe the sugar

as agreed to be purchased over the telephone but described it simply as "Hong Kong granulated sugar," and also contained the further provision, "Shipment June-July from Hong Kong subject contract with original seller, sugar entered for shipment during June-July from Hong Kong but subject to some delay," which, it is alleged, was not part of the oral agreement, and because thereof defendant refused to sign the memorandum. But it is further alleged that Tibbitts Co. was at all times ready and willing to accept 1,000 bags of Hong Kong white granulated sugar of the kind and quality so agreed to be sold by the Meinrath Co. at the price stated, that thereafter the sugar was shipped to St. Louis, that Tibbitts Co. refused to pay the draft without inspection, that it inspected and examined the sugar and ascertained that it was not Hong Kong dry, fine, white granulated sugar and was not equal to or as good as standard American white granulated sugar, that it was so inferior to the quality and standard of American refined white granulated sugar that it could not be sold as white granulated sugar, and it thereupon refused to accept and pay for the same. The reply alleges that Tibbitts Co. requested permission to inspect the sugar. It does not allege that Lux Co. granted that permission, but the evidence establishes that it did.

The sugar arrived at St. Louis on August 5th. Under permission from the Lux Co. the car containing the shipment was at once opened, samples of the sugar taken from the sacks by Tibbitts Co., and on that day it wired the Lux Co. at Topeka, Kansas, its place of business, that it would not accept the sugar because it did not grade up to seller's representations. The telegram was received the next morning. Mr. S. E. Lux, president of the Lux Co., immediately instructed the Meinrath Brokerage Co. to get Tibbitts Co. to accept the sugar or to sell it. For that purpose Mr. Kean, of the Meinrath Co., arrived in St. Louis on August 9th. He first called on Mr. George W. Boswell, Meinrath Co.'s representative at St. Louis, and these two called on several wholesale grocers in St. Louis and tried to sell the car of sugar. They represented it as white granulated sugar. He was there for three days and could not get an offer. While there he took samples and sent some of them to the Meinrath offices at Chicago and Kansas City, and some to the Lux Co. at Topeka. Sugar had suffered a decline in price within a month preceding this time, and it continued to sharply decline throughout the remainder of the year. Mr. S. E. Lux went to

St. Louis and first saw the sugar on August 12th. He instructed the Hutchinson Brokerage Co. of St. Louis to sell it. That company advised him they could not sell it. He visited Tibbitts Co. and told Mr. Tibbitts that he was unable to sell the sugar in St. Louis and that he was going to take it to Topeka to sell. Mr. Tibbitts told him he could do whatever he wanted with the sugar. Mr. Lux then had the sugar shipped to Topeka and it arrived there on August 18th. It was then sold in small lots by the Lux Co. in Topeka and at other places in the State of Kansas. About half of it was disposed of in Topeka and the remainder throughout the state.

During the trial, when the question of the measure of damages came up, it was contended by counsel for plaintiff, Lux Co., that there was no market for the sugar in St. Louis and that the nearest market was at Topeka, Kansas. To sustain that contention the unsuccessful efforts that were made to sell the carload of sugar in St. Louis were relied upon, together with additional proof that it was difficult to make sales of that quantity anywhere, due to declining prices; and we find no proof in the record that sales in carload lots could be made in Topeka during the forepart of August, nor is there any proof of the market price at Topeka in carload or less quantities during that time, further than the testimony of Mr. Lux giving the total amount that he claimed his company received for the sugar disposed of in the manner stated. And there is no evidence in the record as to the different dates on which the lots were sold in Topeka and at other points in Kansas, except a sale of 50 sacks made in Topeka on August 20th, at $18 per cwt., 35 of which were returned by the buyer as being in damaged condition. The total amount received for the sugar, according to the testimony of Mr. Lux, was $16,798, slightly under $17 per cwt. On the part of defendant six witnesses, all residents of St. Louis, some of them wholesale grocers and the others jobbers in sugar, all having many years' experience in handling that commodity, testified that they were selling sugar every day throughout August to the retail trade, some as much as 500 bags per day, and some in much less amount. There were about forty of such business concerns handling sugar to the retail trade in St. Louis. These witnesses testified that from the 5th to the 12th of August they were selling sugar at from $20 to $22 per cwt. They were also constantly buying sugar to supply that trade. One large wholesale gro-

cery was buying daily throughout August about 1,500 sacks, and around August 5th, 6th and .7th was paying therefor around $20 per cwt. Its representative testified that he would have offered around $18 per cwt. for. a thousand bags· of white granulated sugar on August 6th or 7th, and that they were paying around $20 between the 5th and 12th in 1,500-bag lots. On the measure of damages the court instructed the jury:

"Now, if you shall find the issues for the plaintiff you may assess its damages at the difference between the price at which the sugar was bought, to-wit, 24.75 cents per pound, and the price of sugar of the kind you find this to be, on the 6th day of August, 1920, plus freight from San Francisco to St. Louis, and you are to use this measure of damages only in case that you find that at that time there was a market in St. Louis for this sort of sugar. ·If, however, you shall find that on the date mentioned, namely, August 6, 1920, there was no market in the City of St. Louis for this sugar, then you may consider the market price of this sugar at Topeka, Kansas, if you shall find that Topeka, Kansas, was the next nearest market where the sugar could be sold. If you shall find that it was sold at 17 cents a pound at Topeka, and that Topeka was the next nearest place at which an advantageous market could be found, you are entitled to find the difference between the price at which it was sold, provided you find that that was a fair and reasonable market price, and the price for which it was bought. The sale price was 17 cents. The bought price was 24.75 cents, or 24¾ cents. The difference between those two amounts, plus the freight from here to Topeka, is the measure of damages, in that event."

[1] Defendant's counsel contended that the evidence showed a market at St. Louis, that it did not show that there was a market for the sugar at Topeka, that in no event could a market elsewhere than at St. Louis be considered unless the evidence showed there was no market at St. Louis; and saved an exception to the instruction. We think the objection to the instruction well taken. The evidence, in our opinion, showed a market for the sugar at St. Louis. There was some evidence that the entire carload, if of the quality claimed by plaintiff, could have been disposed of there at $18 per cwt. There was no evidence of a market for the ·carload at Topeka. There was conclusive evidence of a market for it at St. Louis in lots of 100 bags or more, which was the way in which it was disposed of at Topeka. Fur-

thermore, the market in lots of 100 bags or more at St. Louis was shown as of the time of the .breach of the contract, and there is an entire failure to disclose the dates of the separate sales made at Topeka and throughout Kansas. We think it was clearly error on the facts to permit the jury to consider what the Lux Co. got for the sugar; and to instruct it to charge the plaintiff with $353.-29 freight from St. Louis to Topeka. The evidence having established a market at St. Louis on the basis on which the plaintiff disposed of the sugar, the market price in lots there was controlling. Gaunt v. Purina Co., 198 F. 60, 117 C. C. A. 168; Salmon v. Helena Box Co., 147 F. 408, 77 C. C. A. 586; Grand· Tower Co. v. Phillips, 23 Wall. 471, 23 L. Ed. 71. Plaintiff's books and records showing sales of the sugar in Topeka and in Kansas had been lost or inadvertently destroyed. When Mr. Lux was testifying on direct examination as a witness for plaintiff this occurred:

"Q. Have you in your possession any memorandum made by you from data in regard to·the lots that this sugar was sold in and the amount received for the lots?

"A. I have.

"Q. You may, if .you desire, refresh your recollection from your memorandum if it was made by you.

"Mr. Sale: I object to his refreshing his memory from a memorandum that he made unless the memorandum was made contemporaneously with the transactions which were supposed to take place."

The objection was overruled.

"Q. Mr. Lux, will you please state to the jury the amount that you received from the proceeds of the sale of this sugar?

"A. $16,798."

There was no other evidence of the amount that had been received for the sugar by the Lux Co.

[2] Where a witness uses a memorandum to refresh his recollection he does not testify from the memorandum, but his recollection of the transaction being refreshed by the memorandum he then testifies to the facts as a matter of present knowledge; and that the memorandum may be reliable for that purpose, it must have been made contemporaneously with the transaction. When the objection was made the court should not have ·permitted the use of the memorandum by the witness until its reliability had been first shown. It was thus error to permit the witness to answer without that prerequisite. Putnam v. United States, 162 U. S. 687, 16 S.·Ct. 923, 40 L. Ed. 1118.

Relying apparently upon the well-known principle announced by this court in Union Selling Co. v. Jones, 128 F. 672, 63 C. C. A. 224, the court instructed the jury:

"Now, if you shall find and believe that the term or name of 'Hong Kong refined granulated sugar' had on or before the 1st day of May, 1920, acquired a definite meaning in the sugar trade, then there was a meeting of minds between the broker representing plaintiff, and the defendant, and, therefore, between plaintiff and defendant, and therefore a contract between plaintiff and defendant; and, regardless of the quality of this sugar, any failure to accept this sugar so offered would constitute a breach of this contract, and you ought to find for the plaintiff. That, of course, means, gentlemen, that the words 'Hong Kong refined granulated sugar' were known generally in the sugar trade as designating a particular sort of sugar, and that when one with this knowledge, and with the knowledge of the trade about this term, bought that sort of sugar he was bound to take that sort of sugar."

The conversation over the telephone with Mr. Tibbitts on May first resulted, as claimed, in the sale of the sugar by Lux Co. to Tibbitts Co. Immediately thereafter, and of date May 3rd, Meinrath Co. made out a sale memorandum of the transaction, signed it and sent it to Tibbitts Co. At the same time a memorandum of like character was made out by Meinrath Co. and sent to Lux Co. In each of these memoranda the sugar was described as "1,000 Bags Approx. 100# each Hong Kong Granulated Sugar." It will be observed that the court, in addition to the description thus given of the sugar, used the word "refined." We think, however, another important word was omitted in the instruction quoted above, and that the sugar sold should have been described as "white Hong Kong refined granulated sugar"; and our reason for that is this: The broker's memorandum contained the clause, "Shipment June-July from Hong Kong subject contract with original seller." When Tibbitts Co. discovered this clause in the memorandum it wrote Meinrath Co. calling attention to it, and asked to see a copy of the original contract, which was furnished. The plaintiff, in making its case, took up that subject. It showed that the 1,000 bags in question were part of a shipment of 2,500 bags made from China Sugar Refining Company, Ltd., of Hong Kong, to Otis McAllister & Company of San Francisco, and that the cargo reached its destination July 16, 1920. McAllister sold the 1,000 bags in question to E. L. Moseley & Company of San Francisco, and Moseley & Co., through Meinrath Co., sold them to Lux Co. on April 19th. Moseley & Co. signed a contract evidencing the sale to Lux Co., in which the sugar was described as 1,000 bags, each about 100 lbs., "White Hong Kong Refined Granulated Sugar." The sale from Lux Co. of this sugar to Tibbitts Co., ten or twelve days later, was "subject contract with original seller," and the contract of sale by Moseley & Co. was furnished to Tibbitts Co. and introduced by plaintiff in evidence as the contract referred to in the broker's memorandum. Plaintiff also introduced the bill of lading of the shipment from San Francisco to St. Louis, in which the cargo was described as "1,000 bags white sugar." Throughout the plaintiff's case as presented to the jury counsel interrogated the witnesses about the sugar being white. Mr. Lux testified that when the car reached Topeka from St. Louis it had in it white granulated sugar. Mr. Moseley was asked if it was white Hong Kong refined granulated sugar. Mr. Bonds, of San Francisco, testified that the invoice of the shipment of 2,500 bags covered white Hong Kong refined granulated sugar, that the bags were marked G. D. over F., which was classified as dry, finely granulated white sugar. Mr. Kean of Meinrath Co., testified that when he offered the sugar for sale in St. Louis after Tibbitts Co. had refused it, he offered it as white granulated sugar. Mr. Stewart, vice president of Meinrath Co., testified that when Tibbitts Co. rejected the sugar it was put in the hands of his company for sale as a car of Hong Kong white refined sugar. Mr. Hutchinson, of the Hutchinson Brokerage Co., which was asked to sell the sugar after it was rejected by Tibbitts Co., testified that they tried to sell it as white Hong Kong granulated sugar. One of the objections made to the sugar by Tibbitts Co. was that it was not white, but had a yellowish tint, and the defendant's witnesses so testified. Mr. Menzies, who has represented the China Sugar Refining Co. at San Francisco for 30 years, testified for defendant. He said that its standard grade of sugar was marked G. D. over F. On being shown samples that the defendant claimed it took from the car of sugar while at St. Louis, he said those samples were not of that grade, that he would not call the samples white, that the Hong Kong refined sugar was equally white, equally crystal and bright to the domestic refined sugar, that the samples were not white Hong Kong sugar, that they had a

very strong molasses smell which white Hong Kong sugar never has, and that the sample in the jar marked Exhibit B would not be accepted by the trade as white Hong Kong refined sugar. Mr. Cohen, of St. Louis, purchased and sold 14,000 bags of Hong Kong granulated sugar during the summer of 1920, and he testified that the samples taken from the car shipped to Tibbitts Co. did not compare to the Hong Kong granulated sugar which he handled, that it was not white enough. There was also controversy over other qualities, which appear to inhere in the general descriptive term "white refined granulated sugar."

· [3, 4] Accepting, as we do, the rule announced in the Union Selling Co. Case, supra, applicable to the sale and purchase of commodities which are to be taken as known in their quality and character from general descriptive terms, we think the omission by the court of the word "white" from that general description was, under reference in broker's sale memorandum, "subject contract with original seller," and the way in which the case was presented by plaintiff prejudicial to the defendant. It appears to us also that there are other erroneous expressions in the instruction prejudicial to the defendant. The court appears to have intended to say to the jury that if "Hong Kong refined granulated sugar" had acquired in the trade a definite meaning as to its character and quality, and this sugar was of that character and quality, it was the duty of the defendant to accept it, and a failure to do so was a breach of the contract on its part; but the instruction advised the jury that a refusal to accept it was a breach by defendant "regardless of the quality of this sugar"; i. e., there was breach although its quality was different from that known to the trade. No specifications of error are made on these particular points, other than they may be found as embodied in some of defendant's requests for instructions which were denied, but as there must be another trial these comments may be helpful. Adhering to the rule in Union Selling Co. v. Jones, supra, the oral representations as to the quality of the sugar, claimed to have been made by Meinrath Co. while negotiations for the sale were on, and pleaded in the answer as a defense, seem to us to have no place in the case. The contract contained no representation as to quality, and if the sugar as described therein and by reference had theretofore acquired in the trade a definite meaning as to its kind and quality, and on this record we think it had (testimony

Menzies and Bonds), the only issue would then be, whether the 1,000 bags was of that kind and quality.

The judgment will be reversed and the case remanded for a new trial.